**Frank GRASSO**

v.

**John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut, et al.**

**Civ. No. B–813.**

United States District Court,
D. Connecticut.

Feb. 5, 1974.

172

Dennis Curtis, New Haven, Conn., for petitioner.

Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

*NEWMAN, District Judge.*

This petition for habeas corpus raises an important issue concerning the responsibility of the United States Board of Parole with respect to a prisoner sentenced under 18 U.S.C. § 4208(a)(2), which makes him eligible for parole consideration at any time, rather than after one-third of his sentence. The issue is whether an (a)(2) prisoner is entitled to have the Board reconsider him for parole after an initial adverse decision made within three months of his incarceration.

■ Petitioner was sentenced on February 13, 1973, in the Northern District of New York for distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to three years imprisonment, with sentence imposed pursuant to 18 U.S.C. § 4208(a)(2). On May 7, 1973, petitioner appeared before Parole Board hearing examiners at the Federal Correctional Institution at Danbury. On May 9, 1973, he received notice that parole was denied and that his case was "continued to expiration" of his sentence. After exhausting administrative remedies, he filed this petition seeking a writ of habeas corpus, a writ of mandamus, and a declaratory judgment. For reasons previously set forth in Battle v. Norton, 365 F.Supp. 925 (D.Conn.1973), this Court believes it is appropriate in such cases to exercise habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 and consider the merits.

■ Petitioner contends that the provisions of § 4208(a)(2) impose upon the Board a requirement of periodic parole consideration. This case does not require decision as to the validity of this contention in all circumstances. Petitioner's case poses the precise question of whether § 4208(a)(2) requires Board consideration at some point subsequent to the initial consideration he has al-

ready received. Resolution of this question requires some analysis of the Board's current practices concerning parole decision-making and, in particular, of the consideration that the Board gives to an inmate's prison performance.

The Board currently uses as an aid in parole decision-making a table of guidelines for the appropriate length of time to be served before release on parole. Fed.Reg. § 2.52, 38 Fed.Reg. 31942 (1973); see Battle v. Norton, *supra*. The table provides guidelines for various combinations of offense severity and offender characteristics. Prison performance is not a factor that determines an inmate's rating on the offender characteristic scale.[1]

However, prison performance is not wholly excluded from parole decision-making. The Board's regulations provide that "exceptionally good institutional program achievement" is an appropri-ate basis for reaching a decision to grant parole earlier than the time period of incarceration indicated by the guidelines. Fed.Reg. § 2.52(c), 38 Fed.Reg. 31942 (1973).[2]

Section 4208(a)(2) was enacted to give sentencing judges the opportunity to make federal prisoners eligible for release at any appropriate time, without having to serve the one-third of their sentences that would otherwise be required for parole eligibility. 18 U.S.C. § 4202. The author of the provision, Congressman Emanuel Celler, emphasized that prison performance was to be a key factor in determining whether an inmate sentenced under the (a)(2) provisions actually secured early release. The provisions are designed, he said, to permit release under supervision at a date earlier than one-third of the sentence "should the prisoner's response to the rehabilitation program justify it."

---

1. The Board has prepared a form of "salient factors" used to rate a prisoner on the offender characteristic scale. See "Guideline Evaluation Worksheet," 38 Fed.Reg. 31915 (1973). These factors all involve objective facts. Forms are made available to the prisoners so that they can determine what their offender characteristic rating is likely to be. The only factor that could possibly be influenced by prison performance is item G, which allots one point, out of a possible maximum of eleven points, for completion of twelfth grade or receipt of a high school equivalency degree, an event that could occur during incarceration. The form identifies the salient factors and their point rating as follows:

*Salient Factors*

Item A
No prior convictions (adult or juvenile) — 2
One or two prior convictions — 1
Three or more prior convictions — 0
Item B
No prior incarcerations (adult or juvenile) — 2
One or two prior incarcerations — 1
Three or more prior incarcerations — 0
Item C
Age at first commitment (adult or juvenile) 18 years or older — 1
Otherwise — 0
Item D
Commitment offense did not involve auto theft — 1
Otherwise — 0
Item E
Never had parole revoked or been committed for a new offense while on parole — 1
Otherwise — 0
Item F
No history of heroin, cocaine, or barbiturate dependence — 1
Otherwise — 0
Item G
Has completed 12th grade or received GED — 1
Otherwise — 0
Item H
Verified employment (or full-time school attendance) for a total of at least 6 months during last 2 years in the community — 1
Otherwise — 0
Item I
Release plan to live with spouse and/or children — 1
Otherwise — 0

2. Even before deciding whether to parole a particular prisoner, the Board considers prison performance as a factor in an inmate's eligibility for parole consideration. To be eligible for parole under 18 U.S.C. § 4202 a prisoner must have "observed the rules of the institution in which he has been confined," and the Board apparently considers this a requirement of parole eligibility for all prisoners, including those sentenced under § 4208(a)(2). *See*, generally, Affidavit of Maurice H. Sigler, Battle v. Norton, *supra*, 365 F.Supp. at 933.

Hearings on H.J.Res. 424, H.J.Res. 425, and H.R.8923 before Subcommittee No. 3, House Committee on the Judiciary, 85th Cong., 2d Sess. (1958) 5–6. Speaking for the Department of Justice, Deputy Attorney General Lawrence Walsh supported the proposal and explained that it would enable the sentencing judge to select a broad enough range between minimum parole eligibility and maximum sentence in which the Board could "see [the inmate's] progress and pick that very moment when he is best suited to go back to the community . . . ." *Id.* at 8–9.

Sentencing judges using the provisions of § 4208(a)(2) have done so in the expectation that the Board will consider prison performance in deciding whether to grant early parole. Judge Weinfeld recently observed, in deciding to sentence pursuant to § 4208(a)(2), "The Parole Board . . . determines, based on all significant factors, whether the defendant's response to the institutional program has been such that release on parole" is warranted. United States v. Zacharias, 365 F.Supp. 256, 257 (S.D.N.Y.1973). In this very case, Judge Foley, in imposing sentence, explained to petitioner that "the sentence in this type of case is in your favor. You are sentenced under Title 18, Section 4208(a)(2), which means that the Board of Parole may determine your eligibility for parole. It depends upon your behavior at Danbury. . . ."

An (a)(2) prisoner normally receives his initial consideration for parole shortly after completion of the prison classification study. As in petitioner's case this occurred less than three months after his incarceration. Obviously, three months is a very brief time to determine whether a prisoner's behavior in prison is sufficiently commendable to warrant the early parole that § 4208(a)(2) authorizes. More precisely, it is a very brief time to determine whether prison performance has been so commendable as to justify a decision to release on parole at a time earlier than the Board's guidelines would specify. By considering petitioner for parole after less than three months in prison and then continuing him until the expiration of a three-year sentence (his mandatory release date is May 16, 1975), the Board precluded from parole decision-making in his case his prison performance over a length of time sufficient to satisfy the purposes of § 4208(a)(2). In other words, an adverse decision was made before the petitioner had served long enough to demonstrate to the Board by his prison conduct that he may have been entitled to a favorable decision.

The unlawfulness of what has occurred becomes readily apparent when petitioner's situation is compared to what he would have faced had he not been given the benefit of § 4208(a)(2). Under § 4202, he would have become eligible for parole after serving twelve months of his three-year sentence. After twelve months, he would have an opportunity to demonstrate the "exceptionally good institutional program achievement" that the Board has recognized might justify release even earlier than the time indicated by the guidelines. Of course it is commendable that the Board carried out the intent of § 4208(a)(2) by considering petitioner for parole after less than three months' incarceration, very likely the earliest time that classification material was available. But the decision to continue him to expiration of his three-year sentence frustrates the purpose of § 4208(a)(2) because petitioner now has lost the chance to demonstrate that his performance in prison over some substantial length of time justifies parole. He is thus now worse off than if he had not received the benefit of § 4208(a)(2). That situation is not merely ironical; it is illegal.

The Government suggests that in cases involving sentences of the length of petitioner's, the Board acts within its discretion when it determines, even after less than three months' incarceration, that the inmate should be continued to expiration. Conceptually, it is possible to imagine that the Board could find in a particular case such aggravating fac-

tors weighing against parole that it should determine that parole would be inappropriate during the balance of the sentence no matter how exemplary the inmate's subsequent prison performance. But that approach still runs contrary to the purpose of § 4208(a)(2). The statute, in the words of its author, permits parole before one-third of the sentence, "should the prisoner's response to the rehabilitation program justify it." This requires consideration of what that response actually is, not merely the Board's prediction that it could not possibly be good enough to justify parole.

The Government also relies on the provisions of 28 C.F.R. § 2.21, which provides:

> Any case may also be specially reviewed at other times upon the receipt of any new information of substantial significance bearing upon the possibility of parole.

However, the possibility of a special review despite a continuation to expiration is not an adequate substitute for a scheduled review. Again, the non-(a)(2) prisoner has a chance at a regularly scheduled hearing to demonstrate after one-third of his sentence that his prison performance justifies favorable consideration. The (a)(2) prisoner should not have to rely on the possibility that a special review will be scheduled in his case. Moreover, it is not clear that the "exceptionally good institutional program achievement" that Fed.Reg. § 2.-52(c), 38 Fed.Reg. 31942 (1973), specifies may justify favorable parole consideration is sufficient to secure a special parole hearing pursuant to 28 C.F.R. § 2.21.

It may well be that with respect to short (a)(2) sentences barely longer than one year, the statute's objectives would not be impaired by a decision to continue to expiration reached after three months in prison. Review after three months hardly deprives the prisoner of any significantly better opportunity he would have to demonstrate suitability for parole only one month later, the one-third mark of a one-year sentence. In this case, however, the difference between the time petitioner was reviewed for parole and one-third of his sentence is nine months. In such circumstances, continuing him to expiration after the early review is not consistent with the beneficial purposes of § 4208(a)(2). It will be up to the Board to determine at what point, not later than one-third of petitioner's sentence, is the appropriate time to consider him for parole so that his prison performance may be fairly evaluated.

By ruling that § 4208(a)(2) requires subsequent Board consideration in this case, this Court is not attempting to determine the outcome of the Board's decision. Petitioner has alleged that, with his offense and his offender characteristics, sixteen to twenty months is the time to be served according to the Board's guidelines. Of course, the Board is not under an obligation to release petitioner strictly according to the guidelines. However, if upon the review required by this decision, the Board decides to continue his total confinement beyond twenty months (or such other period as may be indicated by the guidelines), then it will have to supply some reason to explain its departure from the guidelines. See Fed.Reg. § 2.15, 38 Fed.Reg. 26653 (1973).

Accordingly, it is hereby ordered that the writ will issue discharging the petitioner unless within thirty days the Board rescinds its decision to continue petitioner to expiration and substitutes in lieu thereof a new order continuing petitioner to a date at or prior to the expiration of one-third of his sentence, at which time he will be entitled to parole consideration.