Marcelo **DIAZ**

v.

John J. **NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut, et al.**

Civ. No. B-74-87.

United States District Court,
D. Connecticut.

March 19, 1974.

See also, D.C., 376 F.Supp. 116.

Dennis E. Curtis, New Haven, Conn., for petitioner.

Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, an inmate at the Federal Correctional Institution at Danbury, seeks a writ of habeas corpus to challenge a decision of the United States Board of Parole denying him parole. Since he has exhausted available administrative remedies, it is appropriate to exercise habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 and to consider the merits of the petition. Battle v. Norton, 365 F.Supp. 925 (D.Conn.1973).

On January 26, 1973, petitioner was sentenced to five years' imprisonment in the Eastern District of New York for failure to appear in violation of 18 U.S.C. § 3150. Sentence was imposed pursuant to 18 U.S.C. § 4208(a)(2), which makes a prisoner eligible for parole "at such time as the board of parole may determine," rather than after serving one-third of the sentence, as required by 18 U.S.C. § 4202. On March 3, 1973, petitioner was committed to F.C.I. at Danbury· after he had accumulated 164 days' jail time credit. He received his initial parole hearing in May, 1973, approximately two months after his incarcera-

tion at Danbury. Petitioner was considered for parole pursuant to the Experimental Parole Board Regionalization Project (hereafter "pilot project") adopted by the Board on October 19, 1972. Bureau of Prisons Operations Memorandum (B.P.O.M.) 40100.14. He was denied parole and continued with an institutional review hearing in May, 1975. Under the caption "reasons," he was informed:

1. Your release at this time would depreciate the seriousness of the offense committed and it is thus incompatible with the welfare of society.

2. There does not appear to be reasonable probability at this time that you would live and remain at liberty without violating the law because of your criminal pattern and use of drugs in the community.

■ Although petitioner has not challenged the timetable adopted by the Board for giving him subsequent parole consideration, his *pro se* complaint does state facts which entitle him to relief. Petitioner was given a setoff that would postpone the Board's next consideration of his case to a point approximately thirteen months beyond the expiration of one-third of his sentence.[1] This Court has ruled that a prisoner sentenced under § 4208(a)(2) and denied parole after a brief period of incarceration cannot be continued for subsequent review beyond one-third of his sentence. Grasso v. Norton, 371 F.Supp. 171 (D. Conn.1974). Since Diaz had been incarcerated at Danbury for only two months prior to his initial hearing, he obviously did not have an opportunity before that hearing to establish a pattern of "exceptionally good institutional program achievement," 28 C.F.R. § 2.52(c), which might have justified his release on parole. Furthermore, since there is a substantial interval of thirteen months between petitioner's initial hearing and the expiration of one-third of his sentence, his opportunity to make such a

showing will be significantly better at the one-third point, which is when non-(a)(2) prisoners are considered for parole. In accordance with the *Grasso* decision, he is entitled to parole consideration at the one-third point of his sentence, which will be reached next month, *i. e.*, April, 1974.

Turning to the issues raised by the petition, petitioner challenges the decision to deny him parole because the Board: (a) refused to disclose the substance of the hearing examiner's report and recommendations; (b) did not afford him the opportunity to reply to the adverse information in his file and in the hearing examiner's reports; and (c) based its decision on "facts which are contrary to the circumstances and plea in [his] case" and failed either to discuss such facts at his hearing or to accompany its denial of parole with a reason that would have apprised him of their consideration and alerted him to the necessity of refuting them on appeal.

■ Godwin v. Norton, Civil No. B–910 (D.Conn. Nov. 1, 1973), held that an inmate has no constitutional right to disclosure of a hearing examiner's recommendations, so long as this Circuit leaves parole hearings virtually unprotected by the Due Process Clause, Menechino v. Oswald, 430 F.2d 403, 408–409 (2d Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971). In *Godwin* this Court also rejected the claim that an inmate is denied due process of law because the pilot project procedures do not give him access to derogatory information in his file and therefore do not afford him the opportunity to rebut such information when he presents his case for parole to the Board.

In his remaining claim for relief, petitioner challenges the reasons accompanying the Board's decision because they failed to indicate that the decision was actually based upon his alleged offense —involvement in a conspiracy to smug-

---

1. The one-third point of petitioner's sentence will occur in April, 1974, crediting him with the 164 days of jail time he had accumulated prior to his commitment at Danbury.

gle cocaine, the offense for which petitioner had been indicted when he committed his convicted offense of failing to appear in court.[2] In Battle v. Norton, *supra*, 365 F.Supp. at 930 (D.Conn. 1973), failure to appear was characterized as a "moderate severity" offense on the Board's initial guideline table for decision-making. Petitioner alleges his salient factor score is 10, which would place him in the "very good" category of offender characteristics. Thus, he calculates that his appropriate guideline period is 12 to 16 months. The Board's decision to deny petitioner parole and to continue him with an institutional review hearing in May, 1975, approximately 33 months after his incarceration in August, 1972, indicates that the Board decided to confine him beyond the applicable guideline period determined by the severity of his *convicted* offense and his salient factor score of 10.

■■ This decision to confine petitioner beyond the guideline period might have been reached by the Board solely because of the second stated reason concerning his crime pattern and drug use in the community. However, by resting decision in part on the "depreciating the seriousness of the offense" reason, without further elaboration, the Board appears to have inadequately followed its own regulation requiring reasons, 28 C. F.R. § 2.15 (revised), as interpreted in Battle v. Norton, *supra*; Grasso v. Norton, *supra*, and Lupo v. Norton, 371 F. Supp. 156 (D.Conn.1974). As stated in *Battle*, the Board can use this reason only when it denies parole and continues confinement to a point within or prior to the prisoner's appropriate guideline

period. But *Grasso* and *Lupo* indicated that this reason would not adequately support continued confinement beyond the guideline period, because the guideline table already assesses seriousness of the offense. Moreover, *Lupo* specified what the Board must do to satisfy § 2.15 if it denies parole because of a prisoner's alleged offense, rather than his convicted offense. The Board may well have considered the alleged offense here, because of the obvious relationship between failure to appear and the charge that was pending when the non-appearance occurred.[3]

■■ Since petitioner, as an (a)(2) prisoner, is entitled to another parole hearing in light of *Grasso*, the Board will have an opportunity, if it decides to continue his confinement beyond his guideline period, to clarify its reasons consistent with the decisions of this Court in *Battle*, *Grasso*, and *Lupo*. If such confinement beyond the guideline is ordered, the "depreciating the seriousness of the offense" reason would not be a proper reason for the Board's decision. Moreover, if an adverse parole decision is to be based upon the seriousness of petitioner's alleged offense (for which he was indicted but not convicted), the Board will have to inform him that his alleged offense was used either to increase the severity rating of his offense in selecting an appropriate guideline, or as a reason for confining him beyond the guideline period indicated for his convicted offense.

Accordingly, a writ will issue discharging petitioner from custody unless within sixty days the Board accords pe-

---

2. When petitioner was denied parole in May, 1973, the Board had begun to use as an aid in parole decision-making a table of guidelines for the appropriate length of time to be served before release on parole. *See* Battle v. Norton, 365 F.Supp. 925 (D.Conn. 1973); 28 C.F.R. § 2.52 (1973). The table indicates approximate ranges of time to be served for various combinations of offense severity and objective offender characteristics.

3. Petitioner's alleged offense, conspiracy to smuggle cocaine, might have been rated in any one of the following offense severity categories on the guideline table used by the Board for decision-making under the pilot project: moderate severity (12–16 months incarceration for prisoners with a "very good" salient factor score); high severity (16–20 months incarceration for prisoners with a "very good" salient factor score); very high severity (26–36 months incarceration for a prisoner with a "very good" salient factor score).

**116**

titioner a new parole hearing consistent with this opinion. Since the Board reacted to this Court's ruling in *Grasso* by conducting a review of petitioner's file instead of a hearing at Danbury, the Court emphasizes that the alternative to discharge intended by this decision is an institutional hearing conducted at the Federal Correctional Institution, Danbury, by hearing examiners pursuant to 28 C.F.R. § 2.15, at which the petitioner and his representative shall be entitled to appear. The Court is aware, from supplemental proceedings in the *Grasso* case, that the Board announced on March 4, 1974, a new procedure it proposes to follow for cases requiring parole reconsideration as a result of the *Grasso* decision.[4] Whether that new procedure, in its present or some modified form, is consistent with the requirements of § 4208(a)(2) is an issue presently *sub judice* in the *Grasso* case. To avoid delays and needless uncertainties, the Court believes that cases subsequent to *Grasso* in which an (a)(2) prisoner has been continued beyond the one-third point in his sentence, such as this case, should be given parole consideration pursuant to the Board's regular procedure as contained in 28 C.F.R. § 2.15, at least until a decision is rendered concerning the validity of the Board's March 4, 1974 proposal. This decision, in Diaz's case, requiring a parole hearing within sixty days as an alternative to discharge, intimates no views as to whether, at such hearing, parole should be granted or denied. The papers may be filed without fee.

4. On March 4, 1974, the following memorandum was issued to the staff of the United States Board of Parole by Board Chairman Maurice H. Sigler:
"As a result of litigation in the 'Grasso' case, the following procedure was adopted by the Board and will be inserted in the Rules.
'A prisoner with a maximum sentence of two years or more under Section 4208(a)(2) who is continued to a date past one-third of his maximum sentence at an initial hearing shall upon completion of one-third of his sentence receive a review on the record (including a current institutional progress report) by an examiner panel.'
"In addition the following procedure was adopted for use in the Youth Division.
'A prisoner sentenced under the YCA or FJDA statutes who receives a continuance of two years or more shall receive a review on the record (including a current institutional progress report) by an examiner panel upon completion of eighteen months of such continuance.'"