**UNITED STATES of America ex rel. Michael HILL, Petitioner-Appellant,**

**v.**

**Vito TERNULLO, Superintendent, Elmira Correctional Facility, Respondent-Appellee.**

**No. 526, Docket 74–2351.**

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1975.

Decided Feb. 10, 1975.

William Epstein, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City), for petitioner-appellant.

Margery Evans Reifler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Barbara Ann Shore, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Michael Hill seeks release by way of a writ of habeas corpus from his current incarceration by the State of New York. Without conducting an evidentiary hearing, United States District Judge Harold P. Burke of the Western District of New York denied, on October 5, 1974, Hill's petition for the writ. On appeal, the petitioner argues, as he did in the district court, that his confinement is unlawful because it is based upon a plea of guilty rendered without (1) knowledge of the constitutional rights necessarily waived by such a plea, (2) a factual basis on the record to support the plea, and (3) understanding of the sentencing possibilities. The district court erred in refusing the petitioner an evidentiary hearing on this last point, and we remand for its proper consideration. 28 U.S.C. § 2254; *compare* Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (per curiam). Since this disposition may well obviate the need for consideration of the petitioner's two remaining claims, we refrain from passing on them at this time.[1]

On June 20, 1970, the appellant, then 17 years of age, pleaded guilty in Monroe County Court (Rochester, N.Y.) to second degree robbery. The court, Judge George D. Ogden, accepted his plea in satisfaction of two indictments charging him with various counts of robbery, larceny and attempted murder. The court sentenced Hill to an indeterminate prison term of no less than five years and no more than 15. In his petition for a writ of habeas corpus to the district court for the Western District of New York, the appellant contended that this sentence violated his understanding of the possible consequences of his guilty plea:[2]

> Petitioner was told by lawyer (private) that the maximum amount of time he would receive was four years in the Elmira Reformatory. This was said in one of the total of two private meetings between counsel and client. . . . Petitioner hoping court would act with leneicy [sic] . . . pleaded guilty in hopes of getting probation instead of foru [sic] years.

Petition of October 27, 1972, for Writ of Habeas Corpus at 2. In a letter of July 12, 1973, to the appellant's counsel in the district court, Gerald L. Dorsey, Hill's attorney in the state court proceeding, made no mention of the erroneous advice which, according to Hill, he rendered; instead, he pointed to another possible source of misunderstanding:

1. Judicial restraint is also counseled by the novelty in this circuit of the constitutional issue presented by the appellant's first point. In McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court, in explaining the requirements established by Fed.R.Crim.P. 11 for the acceptance of a guilty plea, emphasized that a valid plea includes an intelligent waiver of one's Fifth Amendment privilege against self-incrimination and Sixth Amendment rights to jury trial and to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), announced, as a matter of Fourteenth Amendment due process, that the guidelines elucidated in *McCarthy* applied in general to the states. As in *McCarthy,* the Court recited the three constitutional guarantees which must be knowingly waived. *Id.* at 243, 89 S.Ct. 1709. When Hill pleaded guilty, the court did not ask him whether he realized that he was relinquishing these rights. The circuits which have addressed the issue agree that, under *Boykin,* specific questions about the waiver of these rights are not required. *See,* Todd v. Lockhart, 490 F.2d 626, 628 n. 1 (8th Cir. 1974); Stinson v. Turner, 473 F.2d 913, 915–16 (10th Cir. 1973); Wade v. Coiner, 468 F.2d 1059, 1061 (4th Cir. 1972); United States v. Frontero, 452 F.2d 406, 415 (5th Cir. 1971). There is impressive authority to the contrary, however, In re Tahl, 1 Cal.3d 122, 132–33, 81 Cal.Rptr. 577, 460 P.2d 449 (1969), cert. denied, 398 U.S. 911, 90 S.Ct. 1708, 26 L.Ed.2d 72 (1970). We postpone for the present, therefore, a decision on this question.

2. In People v. Hill, 38 A.D.2d 689, 326 N.Y. S.2d 1012 (4th Dept. 1971), the Appellate Division rejected, without opinion, Hill's challenge to his conviction on this ground (as well as 12 others). The New York Court of Appeals denied leave to appeal. In raising this claim in his habeas petition, the appellant has thus satisfied the exhaustion requirements of 28 U.S.C. § 2254.

To the best of my recollection, at the time Michael Hill was sentenced, there was some confusion, on my part, concerning his sentence. It was my understanding that the sentence was from five to fifteen years. . This meant that with good behavior he would be out in two-thirds of the minimum time, or approximately two years. · As I recall, this is the way it was explained to Michael. Thereafter, as I recollect, there was a change in the law and he was required to serve the full minimum term.

Appendix of Appellant at C4. This advice regarding the defendant's minimum tenure in prison was, if in fact given, clearly a misrepresentation of the then-existing New York law: Under statutes effective as of September, 1967—almost three years prior to the entry of Hill's plea—a defendant sentenced to an indeterminate term would not be eligible for parole until he had served the minimum period fixed by the court, which could be as much as one-third of the maximum period established. N.Y.Penal Law §§ 70.00, 70.40(1)(a) (McKinney's Consol. Laws, c. 40, 1967). Since Hill was pleading guilty to a class C felony, which carries a statutory maximum of 15 years imprisonment, he stood to receive a minimum sentence of up to five years, and this upper level minimum without possibility of parole is what he in fact did receive. *Id.* § 160.10.[3]

The court below rejected, without a hearing, the petitioner's claim that his plea was tainted by a misunderstanding, fostered by counsel, of the sentence consequences of the plea. In so doing, Judge Burke did not attempt to resolve the apparent conflict between the appellant's and Dorsey's versions of the advice rendered. Rather, the court found, as a matter of law, that the claim lacked merit:

> This is not a valid claim of infringement of the petitioner's rights under the federal constitution. If the defendant's retained attorney was mistaken, as to the sentence the petitioner might receive as a result of his guilty plea, and it is not clear from the letter

---

3. § 160.10 Robbery in the second degree

A person is guilty of robbery in the second degree when he forcibly steals property and when he is aided by another person actually present.

Robbery in the second degree is a class C felony.

§ 70.00 Indeterminate sentence of imprisonment for felony

1. Indeterminate sentence. A sentence of imprisonment for a felony shall be an indeterminate sentence. When such a sentence is imposed, the court shall impose a maximum term in accordance with the provisions of subdivision two of this section and the minimum period of imprisonment shall be as provided in subdivision three of this section.

2. Maximum term of sentence. The maximum term of an indeterminate sentence shall be at least three years and the term shall be fixed as follows:

\*       \*       \*       \*       \*       \*

(c) For a class C felony, the term shall be fixed by the court, and shall not exceed fifteen years;

\*       \*       \*       \*       \*       \*

3. Minimum period of imprisonment. The minimum period of imprisonment under an indeterminate sentence shall be at least one year and shall be fixed as follows:

\*       \*       \*       \*       \*       \*

(b) Where the sentence is for a class B, class C or class D felony and the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that the ends of justice and best interests of the public require that the court fix a minimum period of imprisonment, the court may fix the minimum period. In such event, the minimum period shall be specified in the sentence and shall not be more than one-third of the maximum term imposed. .   .   .

§ 70.40 Release on parole; conditional release

1. Indeterminate sentence.

(a) A person who is serving one or more than one indeterminate sentence of imprisonment may be paroled from the institution in which he is confined at any time after the expiration of the minimum period or periods of imprisonment that have been fixed. Release on parole shall be in the discretion of the state board of parole, and such person shall continue service of his sentence or sentences while on parole, in accordance with and subject to the provisions of the correction law.

from Dorsey to Barrett that he was misinformed, that does not amount to an infringement of the petitioner's rights under the federal constitution. Appendix of Appellant at C7.

This statement of the law misconstrues the thrust of recent decisions of the Supreme Court and of this court. Thus, while McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970), insulates judgments entered on a guilty plea from attack for mistaken "good-faith evaluations of a reasonably competent attorney," it does require that counsel's advice be "within the range of competence demanded of attorneys in criminal cases." *Id.* at 771, 90 S.Ct. at 1449. In a similar vein, while this court has held on various occasions that an attorney's mistaken estimate to his client of possible sentence does not deprive the defendant's subsequent plea of the requisite intelligent and voluntary quality, United States ex rel. LaFay v. Fritz, 455 F.2d 297 (2d Cir.), cert. denied, 407 U.S. 923, 92 S.Ct. 2471, 32 L.Ed.2d 809 (1972); United States ex rel. Bullock v. Warden, Westfield State Farm for Women, 408 F.2d 1326 (2d Cir. 1969), cert. denied, 396 U.S. 1043, 90 S.Ct. 688, 24 L.Ed.2d 686 (1970), it has recognized that counsel's failure to advise his client properly on the maximum term fixed by statute for an offense may vitiate the pleading, United States ex rel. Leeson v. Damon, 496 F.2d 718 (2d Cir.), cert. denied, 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974).

In the case under review, there is evidence that the defendant's plea, like Leeson's, was made with reliance on erroneous legal advice about the ultimately knowable: the length of time which, under the applicable statutes, he might be kept in prison. If Hill was led to believe that he faced a maximum sentence of four years in a juvenile institution,[4] his situation obviously parallels Leeson's and he is entitled to similar relief. On the other hand, if Hill was confused about the minimum period of his incarceration, *Leeson* also controls: Misinformation about a statutory minimum is no less demonstrative of counsel's incompetence, nor necessarily less significant to a defendant's decision to plead guilty, than an error about a statutory maximum. In both instances, counsel is not being second-guessed about a prediction which has proven inaccurate but, rather for a misstatement of easily accessible fact.[5]

On the record before us, however, we hesitate to rule on the merits of the petition. Because of its erroneous view of the law, the district court did not attempt to resolve the petitioner's understanding of the sentence consequences when he pleaded guilty. If it finds that the petitioner's plea was made without understanding of the minimum *or* maximum sentence possibilities, the district court must issue the writ or grant other appropriate relief, *see Leeson, supra,* 496 F.2d 718 at 722. On the basis of the petitioner's and Dorsey's apparently con-

---

4. On two occasions prior to the date of the plea, the state court explicitly denied, in the defendant's presence, requests by Dorsey that Hill be considered for youthful offender status. People v. Hill, Monroe County Court, Minutes of April 30, 1970, at 6; Minutes of May 14, 1970, at 2. From these brief colloquies, however, we do not conclude, as the state would have us, Brief of Appellee at 11, that Dorsey could not have left Hill with the impression that he would receive youthful offender treatment and thus face a maximum sentence of four years. In rejecting this inference, we do not indulge the fiction that the defendant, in court at the time of the colloquies but his attention not directed to them, necessarily comprehended the import of the court's rulings.

5. Vacating a plea on the basis of such incompetence, though, need not rest upon a finding that the defendant has been deprived of his Sixth and Fourteenth Amendment right to the effective assistance of counsel. The focus in this instance is not counsel's effectiveness *per se* but, instead, his client's understanding of the consequences of the plea—an understanding which counsel, along with the court, of course bears a heavy burden to ensure. To the extent that United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965), and other decisions of this court may indicate the contrary, we regard their authority as superseded by Boykin v. Alabama, *supra. See* Du Bois v. Mancusi, 325 F.Supp. 694, 698–99 (W.D.N.Y.1971). *Cf.* United States ex rel. Leeson v. Damon, *supra.*

flicting[6] versions of the facts, we cannot say with the requisite certainty whether one, both or neither alleged defect in understanding tainted the plea. An evidentiary hearing will enable the district court to make this determination with greater assurance. We therefore reverse and remand to the district court for proceedings consistent with this opinion.

Reversed and remanded.

**6.** We do not exclude the possibility that these versions may be harmonious and, indeed, we find substantial evidence in the record indicating that they are: In his petition for the writ, Hill indicates that he did not immediately protest the sentence, despite its deviation from his alleged expectations, "because codefendants [sic] lawyer stated we could be released in two to three years if we stayed out of trouble. . . . " Petition, *supra,* at 2; Dorsey was not present at the time of the plea (another member of his firm was present in Hill's behalf); and Dorsey's letter does not specifically say that *he* advised that the minimum was effectively only about two years but rather that this was Dorsey's impression at the time and that "this is the way *it was explained* to Michael [Hill]." Appendix of Appellant at C4 (emphasis added). Hill's and Dorsey's representations may thus be reconciled as follows: The defendant believed at the time of the plea that the maximum sentence was four years; although he was taken by surprise by the sentence given him, he did not protest at the time because his co-defendant's counsel assured him that he could be released well before four years expired.