Henry Nelson WYNN

v.

The UNITED STATES.

Civ. A. No. 75–1603A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 17, 1975.

William P. Cagney, III, Miami, Fla., for plaintiff.

No appearance for defendant.

## ORDER

FREEMAN, District Judge.

This action, styled by petitioner as *United States v. Wynn,* has been brought to correct his federal sentence imposed by this court on July 31, 1973, as amended, June 27, 1974. Petitioner's conviction was affirmed on appeal. *United States v. Wynn,* 493 F.2d 19 (5th Cir. 1974). Petitioner has brought this action under Rule 35, Fed.R.Crim.P.; however, he implicitly concedes that since the time frames specified by that rule have long since expired, the action should be more appropriately considered as having been filed pursuant to 28 U.S. C. § 2255. The action has been assigned a separate civil number in accordance with normal practice under § 2255; therefore, the caption of the case has been corrected in accordance with the proper alignment of the parties as petitioner and respondent.

Petitioner herein was sentenced to four years imprisonment pursuant to the provisions of 18 U.S.C. § 4208(a)(2), which provides in relevant part as follows:

> Upon entering a judgment of conviction, the court having jurisdiction to impose sentence . . . may fix the maximum sentence of imprisonment to be served in which event the court *may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.* (emphasis added).

Petitioner argues that this court was operating under a mistake of fact regarding the parole implications of petitioner's sentence, since subsequent to the sentencing, the parole board implemented guidelines which in effect do not permit immediate parole eligibility.[1] Relying on cases from the United States Courts of Appeal for the Second, Seventh, and Eighth Circuits, *e. g., United States v. Slutsky,* 514 F.2d 1222 (2d

1. The parole guidelines set forth "customary total time served before release" based upon the severity of the particular offense and based upon the individual prisoner's "salient factor score", which in turn is based upon several variables. *See* 28 C.F.R. § 2.20, as

Cir. 1975) (remanding for consideration of a Rule 35 motion); *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975) (§ 2255 action); *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974) (action under 28 U.S.C. § 2241), petitioner contends that "[a]s a result of guidelines and regulations published after this Honorable Court sentenced the Defendant, he shall serve an amount of time equal to or in excess of a prisoner sentenced without benefit of . . . Section 4208(a)(2)."

■ Assuming, without deciding, that petitioner may be afforded the relief he seeks, modification or reduction of his sentence, pursuant to 28 U.S.C. § 2255, *see Kortness v. United States*, *supra*, this court has nevertheless concluded that petitioner is not entitled to such relief on the basis of the arguments asserted in the petition. Moreover, petitioner's reliance on the above-cited case authority is misplaced. On review of these cases, it is clear that the basis for decision in each of them depended in large part upon adoption of the reasoning expressed by the United States District Court for the District of Connecticut in a series of cases, *e. g., Grasso v.*

*Norton*, 376 F.Supp. 116 (D.Conn.1974); *Grasso v. Norton*, 371 F.Supp. 171 (D. Conn.1974); *Battle v. Norton*, 365 F. Supp. 925 (D.Conn.1974), dealing with implementation of the parole regulations in that area on a trial basis. *See, Kortness v. United States, supra* at 169–70; *Garafola v. Benson, supra* at 1214–16. Irrespective of their validity in mandamus or other similar actions directly concerning the parole process,[2] this court has concluded that the rationale of the *Grasso* cases should not be extended into the area of post-conviction relief.

■ On review of the opinion of the court in the *Kortness* case, it is clear that the result in that case was predicated first, on approval of the *Grasso* cases, and secondly, on the following conclusion:

Under the circumstances of this case, where the Board of Parole may not have informed the sentencing court of new procedures, the court may have imposed sentence under a mistaken belief that the defendant would receive meaningful parole consideration during his § 4208(a)(2) term, rather than be required almost automatically

amended, 40 Fed.Reg. 41334–37 (Sept. 5, 1975). These guidelines are designed to "promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration. . . ." 28 C.F.R. § 2.20(a).

2. The result in *Grasso* has been repeatedly rejected in this district. *See, e. g., Gregory v. United States Board of Parole*, Civil Action No. 74–2509 (N.D.Ga. April 28, 1975) (Hill, J.); *Floyd v. United States Board of Parole*, Civil Action No. 74–1809 (N.D.Ga. Nov. 26, 1974) (Freeman, J.); *Carlew v. Henderson*, Civil Action No. 74–1491 (N.D. Ga. July 23, 1974), *aff'd mem.* 510 F.2d 382 (5th Cir. 1975) (O'Kelley, J.); *Moody v. United States Board of Parole*, 390 F.Supp. 1403 (N.D.Ga.1974) (Smith, Ch.J.), *aff'd mem.* 502 F.2d 1165 (5th Cir. 1974). In fact, in *Garafola v. Benson, supra*, the Court specifically noted the views of this court in this area:

> In the Fifth Circuit, the *Grasso* approach has been rejected. . . . [citing

*Moody v. United States Board of Parole, supra*]. [These decisions] relied on a prior Fifth Circuit decision in banc which had dismissed a prisoner's petition challenging the cursory review given (a)(2) cases in the initial parole hearing as violative of due process and contrary to the statutory requirements. *Scarpa v. United States Board of Parole, et al.*, 477 F.2d 278 (5th Cir. 1973) . . . [*vacated as moot*, 501 F.2d 992 (5th Cir. 1973)]. Although the *Scarpa* opinion did not explicitly discuss the issue presented in *Grasso* . . . the opinion can be interpreted as indicating disapproval of the *Grasso* approach. Of course, *Scarpa's* subsequent history makes the case of no precedential value.

*Id.* at 1215 n. 4. The *Garafola* Court noted also that the *Scarpa* approach has been reiterated in this Circuit in *Sexton v. Wise*, 494 F.2d 1176 (5th Cir. 1974). 505 F.2d at 1215 n. 4. *See also, Cook v. Whiteside*, 505 F.2d 32 (5th Cir. 1974).

to serve the full term imposed, less good time allowances.

*Kortness v. United States, supra* at 170. The implication of this conclusion is that all sentences imposed under the provisions of § 4208(a)(2) before the effective date of the implementation of the parole regulations are invalid, and should be set aside because the sentencing court might not have been aware that the guidelines might effectively preclude early release. On the other hand, it is also possible that the *Kortness* court, in light of the absence of an opinion from the court below,[3] had merely concluded that the action should be remanded for a determination of whether or not the trial court was mistaken in imposing the sentence and whether the sentence should be modified accordingly.[4] The first alternative would result in wholly uneven application of the remedy provided by § 2255, depending on the fortuitous circumstance of whether or not the parole regulations were in effect in the district where the petitioner was sentenced, or alternatively, whether the regulations were in effect where he was subsequently incarcerated. The second alternative, if otherwise supportable, would not require granting petitioner's request for relief in the instant case; for irrespective of the effectiveness of the newly implemented parole regulations, and even assuming the Parole Board religiously adheres to the guidelines in determining parole eligibility, this court was well aware when it sentenced petitioner herein that the likelihood of an early release on parole was slight.

■ In an analogous case, Judge Edenfield expressed his views with regard to the effect of a § 4208(a)(2) sentence on a prisoner's parole prospects in some detail. *See Lambert v. United States,* 392 F.Supp. 113 (N.D.Ga.1975). After noting that prisoners overly "optimistic" regarding their parole prospects following imposition of an (a)(2) sentence might be "rudely surprised" by the realities of the parole system, Judge Edenfield stated the following:

> The rationale behind the indeterminate sentence authorized by 18 U.S.C. § 4208(a)(2) is ill-served by paroling procedures which set a prisoner off for years at a time between review hearings. . . . Since this court loses jurisdiction of the defendant it has sentenced after 120 days, Fed.R. Crim.P. 35, it has no power to follow up on him later to determine if the ends of justice and of effective rehabilitation would be as well or better served by keeping him under parole supervision, rather than in custody, for the remainder of the term. Section 4208(a)(2) was designed to help ameliorate that situation by instituting a degree of cooperation between the judiciary and the executive branch —by permitting the court to share responsibility for determining how long a period a prisoner should actually serve. Ideally, the court, by its use of the (a)(2) sentence, indicates to the parole board its view that [a] prisoner *may* be suitable for supervised release before the normal one-third point in his sentence. *This in no way commits the board to release such a prisoner prior to the one-third point. Indeed, it does not even commit the board to release him before his mandatory release date. It should, however, commit the board to engage in closer and more frequent scrutiny of such a prisoner's institutional record and rehabilitation potential.*

---

3. Although the *ratio decidendi* of the lower court is not fully explained, the *Kortness* Court indicated that the lower court had based its decision on procedural or jurisdictional grounds rather than upon the substantive ground that the implementation of the parole guidelines did not effectively render the sentence invalid by reason of the court's mistake of fact with regard to the implica-

tions of a § 4208(a)(2) sentence. *Kortness v. United States, supra* at 168.

4. The action was "remanded to the sentencing judge to exercise his discretion whether or not to modify Kortness' sentence in light of the guidelines promulgated by the Board of Parole." *Kortness v. United States, supra* at 170.

*Id.* at 117 n. 2 (emphasis added). In *Lambert,* the petitioner had argued that his counsel's advice to plead guilty in light of the favorable parole potential attendant upon an (a)(2) sentence was incompetent and that his subsequent guilty plea was invalid and subject to § 2255 attack. The court ruled, in light of the above-quoted passage, that the advice of counsel, albeit a "bad judgment call", was nevertheless within the range of competence demanded of attorneys in criminal cases; was not "a misstatement of the 'ultimately knowable' "; and did not otherwise "vitiate the intelligence or voluntariness of [the] guilty plea." *Lambert v. United States, supra* at 118. Similarly, the fact that petitioner herein might not in reality be paroled as early as this court, acting as a paroling court, might order, does not, in retrospect, affect the validity of his sentence.

■ Despite certain contrary authority in other jurisdictions, *e. g., Weinstein v. Bradford,* 519 F.2d 728, (4th Cir. 1974) (due process rights apply in parole proceedings), *cert. granted,* 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 664 (1975) (No. 74–1287); *United States ex rel. Johnson v. Chairman of New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated as moot,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974), this court has long ruled that a parole applicant's mere expectancy in obtaining his conditional release is insufficient to warrant constitutional protection. *E. g., Floyd v. United States Board of Parole,* Civil Action No. 74–1809 (N.D.Ga. Nov. 26, 1974); *Carlew v. Henderson,* Civil Action No. 74–1491 (N.D.Ga. July 23, 1974), *aff'd mem.* 510 F.2d 382 (5th Cir. 1975). This court will not intervene in the parole process absent an abuse of discretion on the part of the parole board or absent misapplication of the board regulations. Similarly, it is not the purpose of this court in imposing an (a)(2) sentence to ensure that a prisoner will be released at the earliest possible time. On the contrary, the only purpose of such a sentence is to ensure that the particular prisoner is *eligible* for release at the earliest possible time. *See Lambert v. United States, supra.* This purpose is consistent with the discretionary language incorporated in § 4208(a)(2) and is also consistent with the well settled rule that the ultimate decision to parole or not to parole is solely entrusted to the sound discretion of the paroling authorities. *See* 18 U.S.C. § 4203; *Floyd v. United States, supra. See also Cook v. Whiteside, supra; Sexton v. Wise, supra.* Absent a specific attack on the parole board founded upon an abuse of discretion, petitioner's remedy is before the board itself or in Congress and not before the federal courts. *See Lambert v. United States, supra* at 118 n. 2.

■ As a final matter, it should be noted that some of the procedural deficiencies in the parole process which gave rise to the opinions in the cases cited by petitioner may have dissipated in large part as a result of changes in parole board procedures. Certainly petitioner herein will not be set off without additional consideration of his parole entitlement for a long period of years in accordance with the practice decried in *Lambert v. United States, supra.* In fact, petitioner will be reconsidered in December, 1975. Moreover, pursuant to the newly promulgated parole regulations, petitioner should be afforded a full review hearing at this time rather than merely receiving a review on the record. *See* 28 C.F.R. § 2.14, *as amended,* 40 Fed.Reg. 41332 (Sept. 5, 1975). In addition, in comments affixed as a preface to the repromulgated regulations, Maurice Sigler, Chairman, United States Board of Parole, has noted that the board is considering altering its current practice by setting earlier parole dates. In noting this potential change, Mr. Sigler states that "in the Federal system, a prisoner continued for an institutional review hearing (when that continuance is not limited by Board policy) will frequently be paroled at that date, absent institutional misconduct."

*Id.* at 41330.[5] Thus, it is clear to this court that the parole board has devoted "close and frequent scrutiny" to petitioner's parole prospects, *see Lambert v. United States, supra;* and that the supposed realities of the parole process have not so violated petitioner's statutory or constitutional rights as to compel this court to vacate his sentence.

As this court has concluded that the instant petition presents solely questions of law,[6] and as this court has determined that it is appropriate to resolve these questions without participation from the U. S. Attorney, *see* 28 U.S.C. § 2255, for the reasons hereinabove expressed, this action is hereby ordered to be dismissed.

---

5. Mr. Sigler also commented at some length concerning the board's reasons for not substantively changing the parole guidelines. These comments reiterate the discretionary nature of the guidelines and also indicate that decisions above or below the guidelines may sometimes be warranted. *See* 40 Fed. Reg. 41330. The comments are consistent with the specific wording of the regulation itself, which provides in relevant part as follows:

(b) These guidelines indicate the *customary* range of time to be served before release. . . . The time ranges specified . . . are established specifically for the cases with good institutional adjustment and program progress.

(c) These time ranges are merely guidelines. Where the circumstances warrant, *decisions outside of the guidelines (either above or below) may be rendered.* For example, *cases with exceptionally good institutional program achievement may be considered for earlier release.*

28 C.F.R. § 2.20 (emphasis added). In *Kortness,* the Court noted that the realities of the parole system differ somewhat from this language, since statistics available at that time indicated that the parole board followed the guidelines "between 92 and 94 percent of the time." *Id.* at 169–70.

6. As noted above, this court has repeatedly ruled that the decision of whether nor not to parole a particular prisoner, either within or without the guidelines, is committed to the sound discretion of the parole board; and this court has concluded that § 4208(a)(2) was designed to affect a prisoner's parole eligibility rather than parole entitlement. As a result, consideration of statistical release practices, *see* note 5, *supra,* is not warranted in this proceeding.