John KELLEHER, Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent,
Auburn Correctional Facility,
Respondent-Appellee.

No. 560, Docket 75–2137.

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1976.

Decided Feb. 18, 1976.

Michael R. Sonberg, New York City (Elkan Abramowitz, New York City, on the brief), for petitioner-appellant.

Arlene R. Silverman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

John Kelleher, now serving a sentence of seven to 21 years for attempted murder, appeals from an order of the United States District Court for the Southern District of New York, Henry F. Werker, *J.*, which denied his application for a writ of habeas corpus. The basis of the application was that Kelleher was allegedly not aware of the maximum or minimum terms to which he might be sentenced when he pleaded guilty in a state court to the crime for which he is now imprisoned. We hold that on this record, the district judge correctly held that Kelleher's plea was not taken in violation of the fourteenth amendment. We therefore affirm.

I

Appellant's brief quite sensibly does not discuss the sordid details of the crime to which he pleaded guilty. Nevertheless, it is appropriate to describe briefly what the trial minutes and the evidentiary hearing before Judge Werker disclose of the circumstances of appellant's guilty plea.[1] Kelleher was indicted in June 1971 and charged with Attempted Murder and Possession of a Weapon as a Felony. N.Y. Penal Law §§ 110.00, 125.05. That the charge was only for attempt rather than for murder was little short of miraculous. At trial in December 1971, the People's case showed that in May of that year, Kelleher had shot one Dannie Maschietto, from whom he had arranged to buy some apparently stolen goods, five times in the head and once in the shoulder. Although the pistol had been held two inches from Maschietto's head, he somehow survived to testify against appellant. Other evidence, while not as dramatic, was almost as damaging.

Before trial, Kelleher had rejected an offer of six to 18 years if he pleaded guilty. But after hearing the evidence against him, he told his attorney, "Let's hang it up," and understandably offered to plead guilty. The state judge told him that he faced "a very big sentence . . . a very stiff sentence," but the judge did not state what the maximum and minimum terms were that Kelleher might receive. Kelleher admitted in open court that he had shot Maschietto, and the judge then took the guilty plea. A month later, the judge sentenced Kelleher, who had a number of prior convictions on his record, to a minimum term of seven years and a maximum of 21.

Thereafter, Kelleher attacked his conviction in the state courts on various grounds, not now relevant except as to whether he has exhausted his state remedies. Before Judge Werker, appellant asserted that the substance of his present claim had been presented to the Appellate Division.[2] Ap-

---

1. At the hearing, the district court heard testimony from Kelleher and his attorney at trial.

2. Appellant argued to the Appellate Division that the trial court "should have made further

pellant also argued that the federal district court should consider his constitutional claim on the merits in any event because state corrective process was no longer available. See N.Y.Crim.Proc.L. § 440.10(2)(a), (c).[3] Judge Werker rejected the first argument and accepted the second, citing *United ed States ex rel. Leeson v. Damon*, 496 F.2d 718, 721 (2d Cir.), cert. denied, 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974), and *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1358–59 n.4 (2d Cir. 1974).

On the merits of appellant's claim, the district judge noted that

> the record also shows that in the course of his state proceedings petitioner had been offered a sentence of six to eighteen years if he plead guilty, but petitioner refused this plea bargain. He was also told by the trial judge at the time of the plea that he faced a very "stiff sentence." Moreover, petitioner was no stranger to the courts and judicial procedures since he had other convictions and had served prior prison terms.

The court concluded that the guilty plea was valid, even though neither the state judge nor appellant's counsel had informed him of the possible maximum and minimum sentences because

> [t]he petitioner has not persuaded the Court that his lack of knowledge of the

maximum and minimum terms affected his ability to make an intelligent decision. *Jones v. United States*, 440 F.2d 466 (2d Cir. 1971); *United States v. Welton*, 439 F.2d 824 (2d Cir.), cert. denied, 404 U.S. 859 [92 S.Ct. 157, 30 L.Ed.2d 102] (1971). Petitioner knew at least that he faced up to 18 years, and that he could get a "stiff sentence." It was the overwhelming evidence presented at his trial primarily through the testimony of his victim that made petitioner "hang it up." In light of these factors it would be incredible to conclude that petitioner would not have plead guilty had he known that he faced a maximum of twenty-five years.

Accordingly, the judge refused to grant the writ, and this appeal followed.

## II

■ The first question before us is whether we should consider the merits of the constitutional issue at all in view of Judge Werker's conclusion that its substance had not been presented to the state courts. While we are not absolutely certain that no state remedies are still available,[4] since "[t]he rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power'," *Fay v. Noia*, 372 U.S. 391, 420, 83 S.Ct. 822, 839, 9 L.Ed.2d 837, 858 (1963), quoting *Bowen v.*

---

inquiries into appellant's understanding of the meaning and consequences of his guilty plea to attempted murder before it sentenced him." The argument was based on the possibility that comments of counsel concerning the similarity of attempted murder and assault in the first degree had confused appellant. The precise claim made here, that Kelleher was unaware of the maximum sentence he could receive, was not made. Rather, the confusion referred to seems to have been confusion about the nature of the crime charged.

**3.** See note 4 infra.

**4.** State post-conviction relief is unavailable where "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal . . .", N.Y.Crim. Proc.L. § 440.10(2)(a), and where "sufficient facts appear on the record . . . to have permitted . . . adequate review of the ground or issue raised upon the motion" but the defendant "unjustifiabl[y failed] to raise such ground or issue upon an appeal." N.Y.

Crim.Proc.L. § 440.10(2)(c). It is possible that the state courts might find that the argument raised by appellant in the Appellate Division, see note 2 supra, was sufficiently similar to the argument he now makes that the affirmance of his conviction represents a previous determination of his present claim under § 440.10(2)(a); or that sufficient facts appeared on the record to permit review of the claim, so that appellant's failure to raise it more precisely in the Appellate Division precludes relief under § 440.10(2)(c). On the other hand, it is also possible that the state courts would find that appellant did not present this claim to the Appellate Division and either that his failure to do so was for some reason not "unjustifiable" or that the facts on the record, which did not include evidence of what advice counsel had given appellant concerning the maximum possible sentence, were not "sufficient . . . to have permitted . . . adequate review," thus making § 440.10(2)(c) inapplicable.

*Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939), we would not feel justified in overruling the district judge's exercise of his power to retain the petition and decide it. Moreover, as will be seen below, the underlying issue calls for a reconciling of some of our apparently inconsistent decisions, which may be of help to district judges facing this issue in the future. Under the circumstances, therefore, we think it appropriate to address the merits, as Judge Werker did.

### III

The "test for determining the [constitutional] validity of guilty pleas . . . was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 167 (1970). Appellant argues that when a defendant pleads guilty without knowing the maximum sentence that he faces, he cannot be said to have made an "intelligent choice among alternative courses of action." In the federal courts, Fed.R.Crim.P. 11 requires that the trial judge, before accepting a guilty plea, determine by "addressing the defendant personally" that he understands "the consequences of the plea." After the Supreme Court's decision in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), noncompliance with Rule 11 requires that a federal guilty plea be set aside. In *Jones v. United States,* 440 F.2d 466 (2d Cir. 1971), we held that the maximum possible sentence is a "consequence" of a guilty plea under Rule 11. Appellant would have us hold, in effect, that Rule 11's absolute requirement that a defendant know the maximum possible sentence to which he is subject for the plea to be valid is *constitutionally* required.

In *Jones,* however, we decided to the contrary. Because the guilty plea there was taken prior to the Supreme Court decision in *McCarthy,* noncompliance with the Rule did not require automatic vacation of the guilty plea. *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (per curiam). We did not hold that such automatic vacation nevertheless followed as a matter of constitutional law, but rather remanded for a hearing to determine

> whether Jones was aware of the maximum possible sentence at the time of his guilty plea and, *if not, whether Jones would not have pleaded guilty if he had been so aware.*

> .     .     .     .     .

440 F.2d at 468. (Emphasis added.)

Similarly, in *United States v. Welton,* 439 F.2d 824 (2d Cir.), cert. denied, 404 U.S. 859, 92 S.Ct. 157, 30 L.Ed.2d 102 (1971), we held that *Bye v. United States,* 435 F.2d 177 (2d Cir. 1970) (ineligibility for parole a "consequence" of a guilty plea under Rule 11), was not retroactive and that a defendant seeking to set aside his guilty plea would therefore have to show not only that he was not advised of his ineligibility for parole but also *"that he would not have pleaded guilty had he known."* 439 F.2d at 826. (Emphasis added.)

Finally, in *Serrano v. United States,* 442 F.2d 923 (2d Cir.), cert. denied, 404 U.S. 844, 92 S.Ct. 145, 30 L.Ed.2d 80 (1971), we rejected a claim that the defendant, who had pleaded guilty before *McCarthy* and *Bye,* had been unaware when he pleaded that he faced a minimum sentence of five years' imprisonment:

> Since Serrano by his own admission, and as the record of the plea proceeding clearly reveals, had no reason to expect a sentence of less than seven years, his alleged ignorance of the theoretical minimum penalty of five years' imprisonment *could not have affected his decision to plead guilty.*

442 F.2d at 925. (Emphasis added.) See also *Grant v. United States,* 451 F.2d 931 (2d Cir. 1971); *Korenfeld v. United States,* 451 F.2d 770 (2d Cir. 1971), cert. denied, 406 U.S. 975, 92 S.Ct. 2425, 32 L.Ed.2d 675 (1972).

The import of these decisions is clear. However salutary may be the present requirements of Rule 11, see *Leeson, supra,*

496 F.2d at 720 n.3, where violation of the Rule does not have its present automatic effect, the determination of constitutional voluntariness must be based not only on whether required advice was omitted by a federal district judge, but also on whether it would have made any difference, if given. When a guilty plea is taken by a state judge, we cannot apply to him as a matter of federal constitutional law a higher standard than we apply to a federal district judge performing the same function.

Appellant, however, cites two recent decisions of this court: *Leeson*, supra, and *United ex rel. Hill v. Ternullo*, 510 F.2d 844 (2d Cir. 1975). In the former, petitioner had been erroneously informed by his counsel that under state law he faced "at most" a maximum term of 1.3 to 2.6 years. Because of his youth, however, petitioner could have received and in fact did receive a five-year reformatory term. Petitioner had not been advised by either his attorney or the court of the latter possibility.[5] A panel of this court reversed a denial of the writ, Judge Hays dissenting. We pointed out that "the undisputed proof" was that

> the defendant entered his plea in ignorance of what the maximum possible sentence was, believing it to be substantially less than that which the court was authorized to impose and which, indeed, it did impose.

496 F.2d at 721.

In *United States ex rel. Hill v. Ternullo*, supra, a state prisoner claimed that his guilty plea "was tainted by a misunderstanding, fostered by counsel, of the sentence consequences of the plea." 510 F.2d at 846. There was a dispute over "the petitioner's understanding of the sentence consequences when he pleaded guilty," id. at 847, and so a panel of this court remanded for an evidentiary hearing. Although the opinion emphasizes the "erroneous legal advice" and the "misstatement [by counsel] of easily accessible fact," the court did say:

> If [the district court] finds that the petitioner's plea was made without understanding of the minimum or maximum sentence possibilities, the district court must issue the writ or grant other appropriate relief . . . [citing *Leeson*, supra].

Although the broad language in these cases unquestionably supports appellant's legal position, we do not believe that we are required to reverse Judge Werker. *Leeson* and *Hill* must be considered against the background of the *Jones-Welton-Serrano* line of cases. It would be highly unlikely that the former cases overruled the latter without mentioning them, and, in fact, the later cases are distinguishable. In both *Leeson* and *Hill*, the state defendant actually received misinformation regarding the maximum sentence faced. In such a case, perhaps it can be assumed that accurate information would have affected a defendant's decision to plead guilty. In this case, however, there is no indication at all that appellant would have acted differently if he had been told of the possibility of a 25-year sentence. He had already been offered, and had rejected, a sentence of six to 18 years, he had heard the overwhelming evidence against him, he then initiated the guilty plea himself so that there is no problem of policing an arguably coercive plea bargaining process and he had been advised he would get a "stiff sentence," which actually turned out to be seven to 21 years, only slightly heavier than that previously offered. Under the circumstances, we agree with Judge Werker that "it would be incredible to conclude that petitioner would not have plead guilty had he known that he faced a maximum of twenty-five years."

Accordingly, we affirm the judgment of the district court.

---

5. Appellee indicated at oral argument that there is apparently no requirement under New York State law, as there is under Fed.R.Crim.P.

11, to advise a defendant pleading guilty of the consequences of his plea.