Joseph A. WILLIAMS,
Petitioner-Appellant,

v.

Harold J. SMITH, Superintendent, Attica
Correctional Facility,
Respondent-Appellee.

No. 423, Docket 78–2097.

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1978.

Decided Jan. 16, 1979.

Rolf Nils Olsen, Jr., Buffalo, N. Y. (Stuart Siris and Kathy K. Priest, Third Year Law Students, Faculty of Law and Jurisprudence, State University of New York, Buffalo, N. Y., on brief), for petitioner-appellant.

Gale D. Berg, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on brief), for respondent-appellee.

Before LUMBARD, MOORE and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge:

Joseph Williams appeals from an order of Judge Curtin of the Western District denying his petition for a writ of habeas corpus. Williams contends that his guilty plea in a state criminal prosecution for possession of narcotics was invalid because it was entered, as a result of sentencing misinformation, without full knowledge of its consequences. Since we agree with Judge Curtin that Williams, though misinformed as to the consequences of his plea, would have pleaded guilty even if he had been given accurate information, we affirm the denial of the writ.

Petitioner was arrested in Buffalo, New York on July 26, 1972 after a search of the premises at which he rented an apartment uncovered 51 tinfoil wrapped packages of cocaine.[1] Subsequently he was indicted for possession of a dangerous drug in the fourth degree, a Class D Felony under New York law with a maximum sentence of seven years imprisonment.

Unbeknownst to Williams or his court-appointed attorney, the indictment on the felony charge placed Williams in jeopardy, due to his prior criminal record,[2] of a term of imprisonment far beyond the normal maximum. Under the applicable provisions of New York law, a convicted felon with at least two prior felony convictions may, if found by the sentencing judge to be in need of extended incarceration and lifetime supervision, be sentenced as a persistent felony offender with a minimum term of 15 years and a maximum of life.[3]

In subsequent plea negotiations with the district attorney's office, Williams' attorney, who remained unaware of the persistent offender statute, tentatively agreed that Williams would plead guilty to possession of a dangerous drug in the fifth degree, a Class E Felony with a maximum sentence of four years imprisonment. Though there is some question as to whether the assistant district attorney assigned to Williams' case was aware that the Class E Felony conviction would make Williams eligible for sentencing as a persistent felony offender, he did not mention the possibility of a sentence greater than the normal four year maximum. Williams' attorney related to his client that he faced a four year maximum sentence if he agreed to plead guilty and Williams eventually assented.

A plea hearing was held before Justice Marshall of the New York State Supreme Court on June 22, 1973. For reasons that remain unexplained, Justice Marshall did not have the petitioner's record before him and thus had no knowledge of Williams' prior felony convictions. Consequently, while inquiring as to whether Williams understood the consequences of his plea, Justice Marshall stated that the maximum sentence "in this case" was four years imprisonment.

Justice Marshall did not learn of Williams' criminal record until August of 1973, when he received a probation report on Williams' background. He promptly notified Williams' attorney that a hearing would be held to determine whether Williams would be treated as a persistent felony offender.

Williams' attorney relayed this information to his client in a letter dated August 10, 1973. The letter indicated that Williams faced a term of one to four years if sen-

---

1. The cocaine was located in a shed towards the rear of the property.

2. Williams had a number of prior felony convictions all in the state of Ohio and all predating 1956. Since moving to New York his criminal record was limited to misdemeanor convic-

tions for disorderly conduct, unlawful entry, possession of dangerous drugs in the sixth degree and possession of a hypodermic instrument.

3. N.Y.Penal Law § 70.10 (McKinney).

tenced simply on the Class E possession charge, or a fifteen year to life term if sentenced as a persistent felony offender. Though Williams' attorney stated that he had just become aware of the "drastic possibility" of persistent offender sentencing, he did not suggest, either in the letter or at any other time before Williams was actually sentenced, that Williams might move to withdraw his guilty plea in light of the earlier misinformation. Williams' attorney has since testified that he was not aware at the time that this option was available.

At the persistent offender hearing on September 21, 1973, Williams' attorney urged his client's age, poor health and contrition as factors mitigating against his treatment as a persistent felony offender.[4] Williams himself stated:

"what I'm asking you now is to give me a little leverage because like he said I am not in shape physically to do no long time. I'm not asking you to turn me loose, I know I have to get some time. I would like a little leverage that would give me time to get back out on the street. If I get extended sentence that is it for me, you know. You might just as well liquidate me, that is all, because I am sixty now so I don't think, you know, you won't have more trouble out of me."

Justice Marshall was unmoved, however. Noting Williams' "persistent and aggravated criminal record," he found the petitioner to be a persistent felony offender and sentenced him to a term of 15 years to life.

In his appeal to the state courts, Williams contended that his conviction was invalid since Justice Marshall had failed to advise him fully as to the consequences of his plea. Alternatively, he argued that the court's representation as to the maximum sentence constituted a promise that should be enforced by a remand for sentencing without application of the persistent offender statute. The Appellate Division, 4th Dept., rejected both arguments. *People v. Williams,* 47 A.D.2d 989, 366 N.Y.S.2d 713 (1975). Noting that Williams had made no effort to withdraw his plea even when informed of the possible application of the persistent offender statute, it concluded that it was

"clear that when defendant appeared for sentence he was not relying on the representation made by the court when his plea was taken as to the maximum sentence that could be imposed by the court." *Id.* 366 N.Y.S.2d at 714.

Subsequently, Williams was denied leave to appeal to the New York Court of Appeals.

Having exhausted his state remedies as required by 28 U.S.C. § 2254(b), Williams filed his petition for a writ of habeas corpus in January of 1976. He again argued that his plea was invalid because entered without full knowledge as to its consequences due to the sentencing misinformation.[5]

After an evidentiary hearing at which Williams, his attorney and the assistant district attorney testified, Judge Curtin found that Williams' guilty plea, though entered without full knowledge of its consequences, was voluntary *in fact,* in that it would not have been different even if Williams had received accurate information. According-

---

4. At the time of sentencing, Williams was sixty years old and suffering from diabetes.

5. Though the issue was not directly brought to the attention of Judge Curtin, petitioner contends on this appeal that the representations of the state court and district attorney as to Williams' maximum possible sentence constituted a promise which in turn was breached by application of the persistent offender statute. Citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), petitioner argues that he must be afforded the opportunity to replead in order to insure the fairness and integrity of the plea bargaining process.

We do not believe, however, that such misrepresentations of the law as were made by the court and prosecution can, absent evidence that they were deliberate, be taken to embody a promise to the defendant. This was not a case where either the court or the prosecution committed itself to a particular action within its discretion, but rather a situation in which the legal limits on the court's sentencing authority were misrepresented. Since there was no breach of faith involved, the concerns for the fairness and integrity of the plea bargaining process expressed in *Santobello* are not compromised by our refusal to release from his guilty plea a defendant who did not in fact rely on sentencing misinformation.

ly, he ruled that despite certain deficiencies in the procedure by which he pleaded and was sentenced, Williams' guilty plea was not constitutionally invalid.

There can be little question as to the seriousness of the misrepresentations made to Williams by his attorney, the assistant district attorney and the state court regarding his maximum possible sentence. Since *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), failure to comply with Fed.R.Cr.P. 11, which directs federal trial courts to address a defendant personally and determine whether he understands the consequences of his plea, requires automatic vacatur of a federal guilty plea. This Court, in *Jones v. United States,* 440 F.2d 466 (2d Cir. 1971), held that the maximum possible sentence is one of the consequences that must be brought to the attention of the defendant, and Rule 11 was amended in 1975 to make this requirement explicit.

■ The strictures of Rule 11, however, do not apply to state criminal proceedings, and, as Judge Curtin correctly observed, the test in this circuit for determining the constitutional validity of a state court guilty plea where the defendant has been given sentencing misinformation is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea. *Caputo v. Henderson,* 541 F.2d 979 (2nd Cir. 1976); *Kelleher v. Henderson,* 531 F.2d 78 (2nd Cir. 1976).[6] Where government error is responsible for the misinformation, the government carries the burden of proof on the issue of reliance. *Caputo v. Henderson, supra.*

Addressing the first part of that test, Judge Curtin found, and it is undisputed, that Williams was not in fact aware of the sentencing possibilities confronting him. Williams' attorney testified that he was not

aware of the persistent offender statute and there certainly is no basis for believing that Williams himself possessed a greater knowledge of the law.

The second part of the test for the constitutional validity of Williams' guilty plea, whether accurate information as to the sentencing possibilities would have caused him to plead differently, presents a much more difficult question. The disparity between the maximum possible sentence as represented to Williams at the time of his plea and as it actually existed was very great. Moreover, every legal source upon whom Williams might have been expected to rely, the court, the prosecution and his own attorney, failed to apprise him accurately of the consequences a guilty plea might have.

■ From our review of the record, however, we cannot say that Judge Curtin's finding on this question of fact was clearly erroneous. *See, Caputo v. Henderson, supra,* at 984. To assess properly whether Williams' awareness of the persistent offender statute would have caused him to plead differently it is necessary to consider the legal options available to Williams at the time of his plea. Even if he had been aware of the persistent offender statute, Williams would have been faced with something of a blind choice. Since the determination as to whether he would be treated as a persistent felony offender would be made only following his conviction, whether at trial or by plea of guilty, Williams could not have known at the time of his plea whether the trial judge would impose extended incarceration. Consequently, to the extent that Williams believed that the persistent offender statute would not be applied, a guilty plea would still have had the attraction of a maximum four year sentence as opposed to the seven year term a conviction at trial might bring.

Also of relevance to the choice Williams would have made had he been aware of the

**6.** Petitioner suggests that *Caputo,* which involved misinformation as to the minimum possible sentence, ought not to apply where misinformation as to the maximum possible sentence is given. We find the arguments in support of this distinction unpersuasive and note that this court has previously declined to recognize it. *See Kelleher v. Henderson,* 531 F.2d 78 (1976); *Jones v. United States,* 440 F.2d 466 (1971).

persistent felony offender statute is the strength of the state's case against him and his consequent chances of conviction if he pleaded not guilty. Though the record on this point is unfortunately incomplete, the following excerpt from the testimony of Williams' attorney suggests that Williams did not believe his chances of acquittal to be very good.

". . . A. If he had gotten an acquittal, as far-fetched as that might have been, I don't think he would have taken a chance on it.

Q. Did you advise him it was far-fetched, the chances of acquittal?

A. I don't know whether I told him it was far-fetched. I don't think so, no.

Q. Okay.

A. But I think he knew,—I had told him what the DA's office had in mind as far as evidence and then we probably,—I can't even say we actually did,—we probably discussed their evidence and what would happen if he did go to trial.

Q. Do you have any recollection of your conclusion?

A. That if he went to trial he might not be in good shape, that he might get convicted. . . ." [7]

If Williams did, in fact, believe that his chances of acquittal were "far-fetched," [8] he would have had little incentive to plead not guilty since a conviction at trial for a Class D Felony would have resulted in a greater minimum sentence and an at least equal chance of his being sentenced as a persistent offender.

A final point which suggests inferentially that Williams' plea would not have been different had he been given accurate sentencing information is the failure of either Williams or his attorney to raise any form of objection once they were apprised of the possible application of the persistent offender statute.[9] Williams' sentencing took place several weeks after he and his attorney had been informed of the actual sentencing possibilities, but neither suggested at any point during that time that the plea of guilty had been made in reliance on Justice Marshall's earlier representations as to the maximum sentence. Though we do not discredit Williams' and his attorney's testimony at the hearing before Judge Curtin that they were not aware that Williams could have moved to withdraw his plea, neither can we fault Judge Curtin's conclusion that their silence during this period suggests that accurate information would not have affected their initial plea decision.

Judge Curtin heard the testimony of Williams and his attorney and consequently was in the best position to make the difficult determination of whether Williams would have pleaded guilty had he been given accurate sentencing information. Findings of this sort "relate to such intangibles as motivation and intent [and] depend especially upon the credibility assessments made by those who see and hear the witnesses." *Caputo v. Henderson, supra,* at 984. While the record raises some doubts, we must leave their resolution to the district court unless we are convinced that his findings

---

**7.** Williams' attorney also testified that Williams, despite his understanding that his chances for acquittal were less than good, would not have pleaded guilty had he been aware of the persistent offender statute. Though we have no basis for questioning the credibility of Williams' attorney, there is reason for believing that his assessment of what Williams would have done is colored by hindsight, particularly in light of his presentencing prediction that Williams would not be treated as a persistent felony offender.

**8.** One of the factors that likely discouraged Williams about his prospects for acquittal was the existence in police hands of what was al-

legedly Williams' signed confession. Though Williams challenged the "confession," arguing that the police had only given him a blank piece of paper to sign, his chances of successfully discrediting the document were obviously open to question.

**9.** Because of our disposition of the other issues in this case, it is unnecessary for us to decide whether Williams' failure to move to withdraw his guilty plea constitutes the type of state procedural default that would preclude federal habeas relief under *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

were clearly erroneous. We cannot say that on this record.

Accordingly, we affirm.