William AKINS, Petitioner,

v.

Harold SMITH, Superintendent, Attica Correctional Facility, Respondent.

No. 79 Civ. 3684(MP).

United States District Court,
S. D. New York.

Nov. 26, 1979.

Theodore Krieger, Westport, Conn., for petitioner.

Robert Abrams, Atty. Gen., by Nancy B. Bensal, Deputy Asst. Atty. Gen. and Charles A. Bradley, Asst. Atty. Gen., New York City, for respondent.

## DECISION

POLLACK, District Judge.

This habeas corpus petition under 28 U.S.C. § 2254 was filed in the Western District of New York by a state prisoner confined in the Attica Correctional Facility pursuant to a conviction in New York County Supreme Court on a plea of guilty to charges of robbery in the first degree. The petitioner seeks to vacate the plea entered on June 9, 1976 on the ground he was misled by presumably made but unrequited plea-bargained promises that his sentence would be made concurrent with the inception of a prior sentence that he was serving at the time. The effect of the supposed arrangement would have been to enable petitioner to come before the parole board some 23 months earlier than would otherwise be possible. Relying on 28 U.S.C. § 2241(d), Judge Elfvin transferred all proceedings including an evidentiary hearing on the petition to this District. Accordingly, the hearing has been duly held with both sides participating, and due deliberation has been had.

After hearing the evidence, evaluating the credibility of the testimony, and considering the tangible record of recorded proceedings and legal applications and responses thereto, the Court finds and decides that the petitioner is not entitled to the relief sought for the following decisive reasons: (1) Petitioner's plea was not induced by any unfulfilled promises on the part of the sentencing judge or the prosecutor, (2) Petitioner was not given any sentencing misinformation in relation to his plea of

guilty on June 9, 1976, and (3) Petitioner's decision to plead guilty at that time was based on other considerations and totally independent of his own presumed and if so, misplaced, reliance on certain state law provisions relating to parole.

That part of Akins' criminal record relevant to the present issue begins with his indictment on February 27, 1973 in Bronx County for Burglary in the Third Degree. On September 19, 1973, Akins pled guilty to Attempted Burglary in the Third Degree. On October 15, 1973, he was sentenced to five years' probation by Justice J. DiFede.

Petitioner was arrested several times during 1974. On May 22, 1975, he pled guilty to violation of probation; the probation sentence of October 15, 1973 was set aside and vacated, and Akins was sentenced to state prison for an indeterminate sentence [1] of 0–3 years by Justice Jack Rosenberg.

Petitioner was received in a state facility on June 6, 1975 and was paroled on November 4, 1975, having served only four months and 28 days there.[2] Approximately one month later, by court order dated December 1, 1975 and signed by Justice John G. Dier, Akins was given credit for 652 days of jail time.[3] This had the effect of amending the maximum expiration date of the Bronx sentence to August 19, 1976.

While still on parole, Akins was arrested on April 30, 1976, along with one Larry Moore at 231 Bowery in New York County, for the crime of robbery.

On May 27, 1976, Akins was arraigned in Supreme Court, New York County, Part 30, before Justice Robert Haft, on an indictment charging Armed Robbery in the First Degree and containing 13 counts, exposing Akins to a potential maximum sentence of well over 100 years of incarceration. At this arraignment Akins himself brought the provisions of New York Penal Law § 70.30 to the attention of his court-appointed attorney, Martin B. Rosner, and of Justice Haft. Akins expressed his belief and interpretation of the law, namely that under § 70.30, any sentence imposed on him could be run concurrently with the inception of the previous Bronx sentence on which Akins had satisfied, by his own calculation, 27 months and 18 days (i. e., 4 months and 18 days actually served in the state facility *plus* the 652 days of jail time already credited to his probation sentence.)[4]

Judge Haft dispatched a law clerk to research the point of law raised by Akins. The clerk reported that Akins' reading of the statutes was correct. Nonetheless this all became academic. No plea agreement was reached at this time and no plea was tendered to Judge Haft. Akins rejected Justice Haft's offer of a plea to a Class B felony and a 4½ to 9 year sentence to run concurrently *with the inception* of the previous Bronx sentence. Akins proposed a plea to a Class C felony and a 3 to 6 year sentence which was unacceptable to the Court. Akins was thereupon held over to appear before a trial court.

In the normal course of business as cases were processed at the time, Akins' next appearance was before Justice George Roberts on June 9, 1976. At this time Akins again proposed a plea of guilty with the

---

1. New York Penal Law § 70.00(1) defines an indeterminate sentence as one in which the Court imposes both maximum and minimum terms in accordance with the other provisions of § 70.00.

2. Under New York Penal Law § 70.30, an indeterminate sentence begins to run "when the prisoner is received in an institution under the jurisdiction of the state department of correction." This is the measuring date for the "time served" which is used in calculating the term of imprisonment where a person is subject to more than one sentence to be run either concurrently or consecutively. The interaction of these various statutory provisions will be discussed below.

3. "Jail time" is the time which an accused serves in a local facility awaiting the disposition of the charges. *Matter of Kalamis v. Smith*, 42 N.Y.2d 191, 197, 397 N.Y.S.2d 690, 692–93, 366 N.E.2d 781, 783 (1977).

4. The effect of this concurrency would be to credit the 27 months and 18 days against the minimum of the sentence about to be imposed. This would not shorten the sentence per se, but would shorten the time in which Akins would be eligible to appear before the parole board.

suggestion that any sentence imposed incident to a plea be run concurrently with the inception of the prior sentence (for parole board purposes), as he believed Penal Law § 70.30 permitted. Justice Roberts, however, rejected the interpretation of that section as placed upon it when the parties were before Justice Haft, and Justice Roberts so stated, both at an unrecorded side bar conference with Mr. Rosner, and again on the record, stating his willingness only to run the sentence concurrently with the time to be served on the parole violation. Mr. Rosner reported accordingly to Akins and discussed this with him. Akins then told his lawyer that he agreed to accept a 4½ to 9 year "concurrent" sentence omitting the inception language, "taking his chances", as he told Rosner at the time, that the parole board would read the statutes not as interpreted by Justice Roberts but as had been reported by the law clerk to Justice Haft. A guilty plea was thereupon entered by Akins before Justice Roberts.

On August 2, 1976, Justice Roberts sentenced Akins as predicate felon [5] to an indeterminate sentence of 4½ to 9 years. The sentencing transcript reflects that Justice Roberts imposed the sentence "concurrently with any time he owes on parole." However, he also noted that if the parole board decided to credit Akins with the full 27 months and 18 days (making the sentence concurrent with the part of the underlying Bronx sentence already served and not merely with the unserved period of the parole violation), he would not object. Justice Roberts also expressed his doubts about whether the parole board could or would follow Akins' interpretation of the law. The judgment of conviction correctly conforms to the sentencing understanding and the minutes thereof, reciting that sentence imposed was concurrent with the "violation of parole".

Akins learned in October 1976 that the parole board would not credit him with the full 27 months and 18 days he sought (which included the 652 days of jail time already credited to the probation sentence, as well as the four months and 18 days of state custody), but only with the four months and 18 days of state custody, plus an additional three months and 8 days of jail time served while awaiting the disposition of the current charges. Akins' contention, and what is at stake in the present case, is that he is entitled to roughly an additional 23 months of credit for parole eligibility purposes. As matters stand now, Akins is eligible for parole board review on May 29, 1980.

Upon learning that he was not entitled to the 27 months and 18 days of credit that he anticipated, Akins claims to have sought help by talking to jailhouse lawyers and writing to Rosner. In November 1976, Akins filed his first papers in this matter, a *pro se* Article 78 proceeding in the Supreme Court of New York, Washington County. The Court appointed an attorney from Prison Legal Services to redo Akins' petition and bring it on as a habeas corpus petition instead. The relief sought, however, was the same—credit for 27 months and 18 days. This relief was denied.

Thereafter Akins made a motion to amend, or in the alternative, to vacate his sentence and withdraw his guilty plea under CPL § 440.20. This motion was denied

---

**5.** New York Penal Law § 70.06(1)(a) defines a predicate felon or second felony offender as one "who stands convicted of a felony defined in this chapter, other than a class A felony, after having previously been subjected to one or more predicate felony convictions as defined in paragraph (b) of this subdivision."

Section 70.06(2) provides that a predicate felon must be sentenced to an indeterminate sentence with the maximum and minimum terms set by the terms of § 70.06(3) and (4).

Section 70.06(3) provides maximum sentences for class B, C, D, and E felonies.

Section 70.06(4) provides that the minimum sentence must be set at one-half of the maximum imposed.

In this case, Akins was sentenced on a class B felony, which carried a maximum under § 70.06(3) of not less than 9 and not more than 25 years. Justice Roberts imposed a sentence of 4½ to 9 years, of which Akins would have to serve the 4½ (less any credit) before being eligible for parole.

by Justice Roberts on November 14, 1977, and permission to appeal was denied by the Appellate Division, First Department (Silverman, J.) on April 13, 1978.

■ Because the construction of New York Penal Law provisions relating to the computation of sentences is so interwoven with the present controversy, a close examination of those provisions is necessary, as well as an application of the same to petitioner's criminal record as outlined above. This Court's ultimate conclusion is that Justice Roberts and counsel for respondent are correct in their interpretation of the relevant statutes, and that Akins is not entitled to the additional credit because it represents jail time which was previously credited to another sentence (the Bronx probation sentence) and therefore under the clear terms of New York Penal Law § 70.30(3) could not be credited against a subsequent sentence as well. Akins is, however, entitled to the credit he has been given for the "time served" on the Bronx sentence (four months and 18 days) and for the "jail time" served on the present charges (three months and eight days).

The relevant statutes are:

Penal Law § 70.25 [6] Concurrent and Consecutive Terms of Imprisonment (McKinney's 1975):

1. Except as provided in subdivision two of this section, when multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any *undischarged term* of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and the *undischarged term* or terms in such manner as the court directs at the time of sentence. If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run as follows:

(a) *An indeterminate sentence shall run concurrently with all other terms*; and

(b) A definite sentence shall run concurrently with any sentence imposed at the same time and shall be consecutive to any other term.

2. When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences must run concurrently.

3. Where consecutive definite sentences of imprisonment are not prohibited by subdivision two of this section and are imposed on a person for offenses which are committed as parts of a single incident or transaction, the aggregate of the terms of such sentences shall not exceed one year. (Emphasis supplied)

Penal Law § 70.30 Calculation of Terms of Imprisonment (McKinney's 1975):

1. Indeterminate sentences. An indeterminate sentence of imprisonment *commences when the prisoner* is received *in an institution* under the jurisdiction *of the state* department of correction. Where a person is under more than one indeterminate sentence, the sentences shall be calculated as follows:

(a) If the sentences run concurrently, the time served under imprisonment on any of the sentences shall be credited against the minimum periods of all the concurrent sentences, and the maximum terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run;

(b) If the sentences run consecutively, the minimum periods of imprisonment merge in and are satisfied by service of the period which has the longest unexpired time to run, and except as provided in paragraph (c) of this subdivision, the

---

6. The 1975 edition has been reproduced herein as petitioner was sentenced in 1976. The statutes in effect today are substantially similar.

maximum terms are added to arrive at an aggregate maximum term equal to the sum of all the maximum terms;

(c) The aggregate maximum term of consecutive sentences imposed for two or more crimes committed prior to the time the person was imprisoned under any of such sentences shall, if it exceeds twenty years, be deemed to be twenty years, unless one of the sentences was imposed for a class B felony, in which case the aggregate maximum term shall, if it exceeds thirty years, be deemed to be thirty years.

2. Definite sentences. A definite sentence of imprisonment commences when the prisoner is received in the institution named in the commitment. Where a person is under more than one definite sentence, the sentences shall be calculated as follows:

(a) If the sentences run concurrently and are to be served in a single institution, the terms merge in and are satisfied by discharge of the term which has the longest *unexpired time* to run;

(b) If the sentences run consecutively and are to be served in a single institution, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term, or by service of two years imprisonment plus any term imposed for an offense committed while the person is under the sentences, whichever is less;

(c) If the sentences run concurrently and are to be served in more than one institution, the term of each such sentence shall be credited with the portion of any concurrent term *served after* that sentence was imposed;

(d) If the sentences run consecutively and are to be served in more than one institution, the aggregate of the time served in all of the institutions shall not exceed two years plus any term imposed for an offense committed while the person is under the sentences.

3. Jail time. The term of a definite sentence or the maximum term of an indeterminate sentence imposed on a person shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence. *In the case of an indeterminate sentence,* if the minimum period of imprisonment has been fixed by the court, the credit shall also be applied against such portion of the minimum period as exceeds one year. The *credit* herein provided shall be calculated from the date custody under the charge commenced to the date the sentence commences and *shall not include any time that it credited against the term or maximum term of any previously imposed sentence* to which the person is subject. Where the charge or charges culminate in more than one sentence, the credit shall be applied as follows:

(a) If the sentences run concurrently, the credit shall be applied against each such sentence;

(b) If the sentences run consecutively, the credit shall be applied against the aggregate term or aggregate maximum term of the sentences and against each minimum period of imprisonment fixed by the court.

In any case where a person has been in custody due to a charge that culminated in a dismissal or an acquittal, the amount of time that would have been credited against a sentence for such charge, had one been imposed, shall be credited against any sentence that is based on a charge for which a warrant or commitment was lodged during the pendency of such custody.[7] (Emphasis supplied)

■ By operation of law, petitioner's 1976 robbery sentence (the one in controversy here) ran concurrently with the undischarged portion of petitioner's 1975 Bronx sentence. Under Penal Law § 70.25(1)(a), when a person subject to an undischarged term of imprisonment previously imposed by a Court of New York State is sentenced to an additional indeterminate term of imprisonment, if the Court does not specify

7. The remainder of § 70.30 is not relevant to the present controversy.

the manner in which the second sentence is to run, the sentence runs concurrently with the undischarged term of the previous sentence. *See New York v. Bostick*, 67 A.D.2d 930, 931, 413 N.Y.S.2d 280 (2d Dept. 1979).

 As indicated above, an indeterminate sentence commences when the prisoner is received in an institution under the jurisdiction of the State Department of Correction. Penal Law § 70.30(1)(a) provides the means of calculating the terms of imprisonment if a prisoner is serving more than one indeterminate and concurrent sentence. This section allows the time served under imprisonment on any undischarged term of the sentences to be credited against the minimum periods of all undischarged terms of the current sentences, and the maximum terms merge in and are satisfied by the discharge of the term which has the longest unexpired time to run.[8] *Matter of Witteck v. Superintendent*, 65 A.D.2d 249, 412 N.Y. S.2d 675 (3d Dept. 1979). *See also Gonzalez v. Kearney*, 62 A.D.2d 345, 405 N.Y.S.2d 100 (2d Dept. 1978).

On the facts of the case at hand, Akins' minimum of 4½ years was credited with and reduced by four months and 28 days for the time served in a state facility on the 1975 Bronx conviction.

However, petitioner expected a credit of 27 months and 18 days, a figure derived by adding the four months and 28 days to the 652 days of "jail time" served in a local facility pursuant to the 1975 Bronx conviction.

These 652 days, however, had already been credited towards the Bronx sentence and hence Akins is barred by operation of Penal Law § 70.30(3) from applying those days to the 1976 sentence. That section specifically provides that credit for jail time

shall not include any time that is credited against the term or maximum term of any previously imposed sentence to which the person is subject.

The Court in *Kalamis v. Smith, supra,* discussed the purpose and application of Penal Law § 70.30(3):

The primary purpose of the statute is to give a person convicted of a crime, credit for the time he has spent in local custody awaiting disposition of the charge. It is also intended to give him credit for the time spent in a local facility after pronouncement of sentence, since an indeterminate sentence does not formally commence until the person is received at a State institution . . .. However, even though a person has been held in local custody on a certain charge, he is not entitled to have the time credited against the sentence imposed on that charge if it has already been credited to a 'previously imposed sentence.' 42 N.Y.2d at 197, 397 N.Y.S.2d 692–93, 366 N.E.2d at 783–84.

It is clear that petitioner was not entitled to the 652 days of "jail time", and the refusal to credit this time toward the 4½ year minimum was proper. *See Matter of McDougal v. Vincent,* 51 A.D.2d 737, 379 N.Y.S.2d 118 (2d Dept.), *app. denied,* 39 N.Y.2d 710, 387 N.Y.S.2d 1025, 355 N.E.2d 307 (1976); *Matter of DeLesline v. Ward,* 54 A.D.2d 1132, 389 N.Y.S.2d 78 (4th Dept. 1976); *Matter of Canada v. McGinnis,* 36 A.D.2d 830, 321 N.Y.S.2d 166 (2d Dept.), *aff'd,* 29 N.Y.2d 853, 328 N.Y.S.2d 4, 277 N.E.2d 925 (1971).

Respondent urges that the case of *Gonzalez v. Kearney, supra,* rests foursquare on the facts and law involved in the present action, and is dispositive of any claim that the 652 days should have been treated as time served pursuant to § 70.30(3). Without repeating the facts of *Gonzalez* here, this Court agrees with respondent and finds that under New York law Akins is not entitled to any credit other than that which he has already properly received.

The real question at hand, however, is whether the alleged confusion about this credit at the time of sentencing entitles Akins to withdraw his plea. Having exhausted his state court avenues of review

---

**8.** It should again be noted that a credit towards a minimum period of incarceration merely reduces the time an inmate must serve before he can appear before the parole board for a review of his confinement. *See* New York Correction Law §§ 212, 214.

Akins filed the present petition[9] claiming that under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 472 (1971), he is entitled to have his plea back since it was made in reliance on an alleged promise that he would receive the full 27 months' credit on his 4½ year minimum sentence.

The starting point for a discussion of whether a state prisoner is entitled to withdraw a plea of guilty is the Second Circuit's most recent statement of the relevant tests. In *Williams v. Smith*, 591 F.2d 169, 172 (2d Cir. 1979), Judge Lumbard wrote:

. . . the test in this circuit for determining the constitutional validity of a state court guilty plea when the defendant has been given sentencing misinformation is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea. *Caputo v. Henderson*, 541 F.2d 979 (2d Cir. 1976); *Kelleher v. Henderson*, 531 F.2d 78 (2d Cir. 1976). Where government error is responsible for the misinformation, the government carries the burden of proof on the issue of reliance. *Caputo v. Henderson, supra.* (footnote omitted)

The *Williams* Court affirmed the finding, after a hearing, that Williams would not have changed his plea even if he had been aware of the different sentencing possibilities confronting him. In so finding, the Court relied on three considerations:

1. Williams could not know if the persistent offender statute would be applied until after conviction, whether by plea or by trial, and the plea offered a reduced sentence.

2. Williams' own estimate of his chances of acquittal were not good. .

3. Sentencing took place several weeks after Williams learned of the persistent offender possibility, and in that time, he made no attempt to withdraw his plea.

■ In the present case it is clear, despite petitioner's assertions, that there were no unfulfilled promises made, no misinformation given, and no reliance by petitioner at the time that he tendered his plea of guilty to Justice Roberts.

At the evidentiary hearing before this Court, Rosner took the stand and testified that he fully informed Akins at the time of his sentencing that Justice Roberts was skeptical and disagreed with Justice Haft's alleged interpretation of Penal Law § 70.30, and that Justice Roberts refused to use language about the inception of the sentence. The same assertions were made in Rosner's affidavit in support of Akins' motion under CPL § 440.20. Akins testified, less than persuasively, that he could not recall if this. was indeed true. Similarly, Akins also testified that he did not recall whether Justice Roberts expressed his doubts on the record, but the transcribed minutes clearly indicate that he did:

Mr. Rosner: Your Honor, it was my understanding that the sentence would run concurrent from the inception.

The Court: That may very well be by operation of law. That may very well be the interpretation given to it by the parole people. *It is not my interpretation.* If that is the interpretation they give to it, I have no objection. (Emphasis supplied)

9. Akins filled out a § 2254 application form in conjunction with instituting these proceedings in the United States District Court for the Western District of New York. Questions 15(f) and (g) of that form ask for the name and address of the attorney who represented the petitioner at any post-conviction proceedings and on any appeals from the same. In response to each question, Akins indicated that he acted *pro se*, but that the motion was prepared by counsel, Mr. Martin Rosner. At the hearing before this Court Akins testified that Rosner also prepared the papers for the present motion, even though Judge Elfvin seemed to

give great weight to the fact that Akins was acting *pro se*. On the stand both Rosner and Akins offered the explanation that Rosner understood his assignment to represent Akins terminated with the imposition of sentence, and for that reason *preferred to proceed in this manner*. The practice of purporting to appear *pro se* while secretly enjoying the assistance of counsel is, in the words of Judge Tyler, "grossly unfair to both this court and the opposing lawyers and should not be countenanced." *Klein v. H. N. Whitney, Goadby & Co.*, 341 F.Supp. 699, 702 (S.D.N.Y.1971).

The sentencing minutes are consistent with the judgment of sentence in that both say that the defendant is sentenced "concurrently with the violation of parole" not with "inception of" the previous sentence, as Akins and Rosner would have wished. Rosner even admits that Justice Roberts specifically refused to use the "inception" language in imposing sentence. Justice Roberts himself testified at the hearing that although he has no independent recollection of this particular sentencing, it has been his unfailing practice to make the record of sentencing consistent with any off the record conversations or agreements.

Thus, it is clear from the written records and from the testimony of Akins, Rosner, and Justice Roberts that there were absolutely no off-the-record or on-the-record promises, misstatements, or misrepresentations made by the sentencing judge to either Akins or to his attorney. It is also quite clear that Akins was fully aware of the sentencing possibilities confronting him at the time, and that the present controversy does not actually relate to the sentence imposed, but to the parole board's subsequent interpretation of Akins' eligibility to appear before it. What happened was that Akins took a calculated chance on what the parole board would do (on parole matters of course) with a concurrent judgment that did not recite that it was to operate from the inception of a previous sentence. Akins could not rely on Justice Haft's interpretation of the statute because he had rejected Justice Haft's offer, which would have included the "inception" language he now claims was so important to him. In accepting the bargain struck with Justice Roberts, which clearly and designedly was to omit the "inception" language, Akins could only rely on what Justice Roberts said, both off the record and on.

It should be noted that even if this were a case involving sentencing misinformation, the evidence adduced at this hearing reveals that there is another very clear and convincing reason why this case does not come within the strictures of *Santobello v. New York, supra,* namely that there is no nexus whatever between petitioner's misplaced reliance on Penal Law § 70.30(1)(a) and his decision to plead.

At his hearing, Akins admitted unequivocally that he did not want to go to trial because he thought he had no chance of acquittal. He was aware that he was facing 13 counts, exposing him to possible incarceration for a term of over 100 years. Petitioner also knew that the State was prepared to go to trial and had several eyewitnesses who were ready and willing to testify, including an assault victim who had suffered permanent injury.[10] Given these considerations, the decision to accept a 4½ to 9 year sentence was a bargain that appealed to Akins over and above any other considerations.

The petition to withdraw the guilty plea has no factual or legal basis on which to support it and accordingly is denied.

SO ORDERED.

---

**10.** Assistant District Attorney Linda Fairstein, who handled the case at the time of the plea bargained agreement with Justice Roberts, testified at this hearing that the State had four eyewitness victims who were ready and willing to testify, as well as the two police officers who arrested Akins in the store where the robbery occurred. The victim whose hearing was permanently damaged was also present in court at the time of Akins' arraignment, evidencing her interest in the case and willingness to cooperate with the State.