**Robert E. BLACK, Petitioner,**

v.

**Philip COOMBE, Jr., Superintendent, Otisville Correctional Facility, Respondent.**

**80 Civ. 4994 (GLG).**

United States District Court, S. D. New York.

Feb. 4, 1981.

As Corrected March 5, 1981.

David Steinberg, Poughkeepsie, N.Y., for petitioner.

Robert Abrams, Atty. Gen., of the State of New York, New York City, for respondent; by Eleanor Janosek Doyle, Deputy Atty. Gen., New York City, of counsel.

## MEMORANDUM DECISION AND ORDER

GOETTEL, District Judge.

Petitioner, who is serving a sentence of fifteen years to life, following a guilty plea to the murder of an off-duty police officer during the course of a robbery, seeks a writ of habeas corpus. He contends that he should have received no more than a fifteen-year sentence, pursuant to his plea bargain, and that he was never adequately advised that intent was an element of the crime of second degree intentional murder.

*Procedural Background*

Petitioner's guilty plea was entered in April of 1968 before Justice Peter T. Farrell of the New York State Supreme Court.[1] The court clearly advised the defendant that the only understanding was that his *minimum* sentence would not be less than

fifteen years. On November 22, 1978, Justice Farrell sentenced petitioner to a minimum of fifteen years and a maximum of not more than twenty-five years. Defense counsel thanked the court. No objection was voiced that the sentence was not in accordance with the plea bargain.

Shortly thereafter, Justice Farrell became aware that a recent amendment to the New York State penal law required defendants convicted of felony murder (second degree intentional murder) to be sentenced to a maximum term of life imprisonment. Consequently, on December 17, 1968, he brought petitioner and his counsel back to court and advised them that, while there was discretion on the minimum sentence, the maximum must be life. He stated that he was ready to set aside the original sentence he imposed as contrary to law. Defense counsel objected, pointing out that the original sentence was fifteen years to twenty-five years. The court then responded that counsel had stated, either on the record or at a sidebar conference,[2] that there would be no motion to withdraw the sentence and that defendant was ready for sentence. The court offered to adjourn the matter until the following day and defense counsel declined, urging the court to change the offense into a class B felony so that the prior sentence would be legal. The court declined to do this because the District Attorney had informed him that he would not recommend it. Defense counsel then responded that they stood ready to proceed at that time. The court then resentenced the defendant to a minimum of fifteen years and a maximum of life.

Defendant, through different counsel, appealed his sentence on grounds that the plea of guilty was not freely given[3] and that the alternative of a death penalty, in

---

1. While the Attorney General's memorandum of law in opposition, pages 2 and 3, makes several references to events occurring in 1978, it is clear, from a review of the transcripts, that all these events occurred twelve years ago.

2. Since this discussion does not appear in the transcripts, it must have been at the sidebar, off the record.

3. The argument concerning a tainted plea was not very clear. Counsel seemed to argue that offering the fifteen-year minimum sentence to induce a guilty plea was a form of coercion rendering the plea invalid.

the event of a trial and conviction, was unconstitutional. The appeal was unsuccessful, as was a subsequent motion for a writ of error *coram nobis*, raising essentially the same issues. The Court of Appeals affirmed without opinion the decision of the Appellate Division and the trial judge dismissed a second *coram nobis* proceeding on grounds that it was identical to the first.

Some ten years after his sentence, petitioner broadened his collateral claims to include the argument that there was an off-the-record agreement that the *maximum* sentence would be twenty-five years, and, additionally, that he had not been advised of the requisite elements of intentional murder. This motion was also denied, the court noting that the delay of nearly a decade was ". . . a significant factor which must weigh heavily against the defendant in determining the validity of his present assertions. The reopening of an old conviction when a retrial would be a virtual impossibility would not be in the interest of justice." The Appellate Division denied leave to appeal. With one minor exception noted below, it appears that state remedies have been exhausted.

*The Plea*

Petitioner's contentions, concerning the voluntariness of his guilty plea, have two branches:

1. He now contends that the off-the-record plea bargain was that he would receive a sentence of *merely* fifteen years and not of a *minimum* of fifteen years;

2. He was not aware, and was not advised, that his plea would require that the maximum sentence be life.

The first claim, that petitioner was assured that he would receive fifteen years as his total sentence, is totally belied by the transcripts of the proceedings. The court was quite clear in discussing the plea to make sure that petitioner understood that he would receive a minimum sentence not in excess of fifteen years. It is beyond belief that petitioner's alleged misunderstanding would have been ignored throughout the sentencing, resentencing, appeals, and three *coram nobis* writs.[4] Moreover, there has been no exhaustion of state remedies as to this claim.

While it is clear that petitioner, as well as his counsel and the sentencing judge, was unaware at the time of the plea that New York law required that the maximum term must be life imprisonment, it appears quite likely that he was aware that this was a possible consequence of pleading guilty to murder in the second degree. No promise was made to the petitioner concerning his maximum sentence. Moreover, petitioner had a total of four competent attorneys during his plea, sentence, and resentence.

■ The voluntariness of a plea is determined by considering all the relevant surrounding circumstances. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). We will assume, without deciding, that the absence of knowledge that the plea mandated a maximum sentence of life is a circumstance that renders the plea involuntary. *Compare United States ex rel. Leeson v. Damon*, 496 F.2d 718 (2d Cir.), *cert. denied*, 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974); *with Kelleher v. Henderson*, 531 F.2d 78, 81 (2d Cir. 1976).[5] We will also entertain the possibility that this constitutes a plea bargain violation under *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). *But see Williams v. Smith*, 591 F.2d 169, 171 at n.5 (2d Cir. 1979). Assuming this to be so, however, the petitioner's time to assert his rights was when the court resentenced him on December 17, 1968. Although petitioner now contends that he was unaware that he had a right to withdraw his plea, the transcript cited above makes it quite clear that his counsel not only knew of this

---

4. Indeed, in the papers submitted on the state writs, the claim is specifically made that petitioner's attorney had told him he would receive a sentence of fifteen to twenty-five years.

5. The maximum possible sentence is a matter of which the defendant must be aware in taking a plea under federal procedures. *Jones v. United States*, 440 F.2d 466 (2d Cir. 1971).

possibility, but considered it and rejected it. While it would have been better to have established this on the record, rather than in an earlier sidebar conversation, the sentencing judge's remarks clearly establish that this occurred. Moreover, we have no affidavit from the defendant's attorney at the time of sentencing even vaguely corroborating petitioner's claim. Even in the presence of such a claim, the silence of both petitioner and his counsel over a period of twelve years indicates that there never was any real possibility or consideration of withdrawing the plea.

The recent case of *Williams v. Smith, supra,* 591 F.2d 169, is instructive in this regard. In that case, unknown to the petitioner or his counsel, the indictment placed petitioner in jeopardy, due to his prior criminal record, to a term of imprisonment far beyond the normal maximum (*i. e.*, minimum of fifteen years and maximum of life, identical to this petitioner). When the attorney subsequently became aware of the possibility of "persistent offender" sentencing, he gave no indication that this might motivate petitioner to withdraw his guilty plea. The state appellate courts noted that the petitioner had made no effort to withdraw his plea even when informed of the possible application of the persistent offender statute and, consequently, was not relying on the earlier representations as to what the maximum sentence was that could possibly be imposed. The district court conducted an evidentiary hearing on Williams's federal habeas corpus petition and concluded that the guilty plea, though entered without full knowledge of its consequences, was, in fact, voluntary, since petitioner would not have acted differently even had he had accurate information. On appeal, in contrasting federal procedures with what is constitutionally required,[6] the Second Circuit noted that:

> The strictures of Rule 11, however, do not apply to state criminal proceedings,

and, as Judge Curtin correctly observed, the test in this circuit for determining the constitutional validity of a state court guilty plea where the defendant has been given sentencing misinformation is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea.

\* \* \* \* \* \*

The second part of the test for the constitutional validity of Williams' guilty plea, whether accurate information as to the sentencing possibilities would have caused him to plead differently, presents a much more difficult question. The disparity between the maximum possible sentence as represented to Williams at the time of his plea and as it actually existed was very great. Moreover, every legal source upon whom Williams might have been expected to rely, the court, the prosecution and his own attorney, failed to apprise him accurately of the consequences a guilty plea might have.

*Williams v. Smith,* 591 F.2d 169, 172 (2d Cir. 1979).

Here, it should be noted that the sentence disparity was not as great. The minimum was the same and the maximum increased from twenty-five years to life. Moreover, petitioner's option was to go to trial where, upon conviction, he would have been subjected to a mandatory maximum sentence of life imprisonment as well as a minimum term of twenty-five years. Under both the original sentence and the resentence, petitioner is eligible for parole after fifteen years. N.Y. Penal Law § 70.40(1)(a). The increased maximum does not necessarily mean that petitioner will actually be incarcerated for any longer period of time. It was not such a change as would suggest a compelling reason to withdraw the guilty

6. *See* n.5 *supra.*

plea.[7] If it was, more would certainly have been said at the time of resentence. As the Second Circuit noted in *Williams v. Smith, supra,* 591 F.2d 169 at 173:

> A final point which suggests inferentially that Williams' plea would not have been different had he been given accurate sentencing information is the failure of either Williams or his attorney to raise any form of objection once they were apprised of the possible application of the persistent offender statute. Williams' sentencing took place several weeks after he and his attorney had been informed of the actual sentencing possibilities, but neither suggested at any point during that time that the plea of guilty had been made in reliance on Justice Marshall's earlier representations as to the maximum sentence. Though we do not discredit Williams' and his attorney's testimony at the hearing before Judge Curtin that they were not aware that Williams could have moved to withdraw his plea, neither can we fault Judge Curtin's conclusion that their silence during this period suggests that accurate information would not have affected their initial plea decision.

■ Moreover, twelve years having passed, this petition is subject to dismissal because of petitioner's failure to show that his delay in filing it "is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." Rule 9(a) of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254. There is no possibility that the state could properly try the petitioner after a lapse of twelve years. *See United States ex rel. Cooper v. Zelker,* 339 F.Supp. 410, 412 (S.D. N.Y.1972). Consequently, it would be prejudicial to the state to allow a withdrawal of the plea at this time.

*Advice Concerning Elements of the Crime*

■ Finally, petitioner contends that he was not adequately advised that intent was an element of the crime. His indictment charged him in the first count with a felony murder and in the second count "with intent to cause the death of Anthony Graffia, caused the death of Anthony Graffia by shooting him with a pistol." At the time of taking the plea, the court advised him that if he pleaded guilty to this count it would mean "that you admit that acting in concert with Williams, Manning and Patterson on February 19, 1968, with *intent to cause the death of Anthony Graffia,* you caused his death by shooting him with a pistol, . . ." Plea minutes, p. 5 (emphasis added). Petitioner admitted this. Then, in a prolonged interrogation, he described the shooting of the off-duty police officer with the pistol.[8] To claim that he was not advised that he would not be guilty of the crime had he not done it intentionally (and the inferential argument that it was not an intentional shooting) is frivolous.

The petitioner's application for a writ of habeas corpus is denied in all respects.

SO ORDERED.

---

7. The failure to move to withdraw the guilty plea may be a procedural default precluding federal habeas corpus relief under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

8. The policeman, who was in civilian clothes, fired a shot from his gun.